**L.F.F., Appellant,**

**v.**

**P.R.F., Appellee.**

Superior Court of Pennsylvania.

Argued May 13, 2003.

Filed July 3, 2003.

---

Daniel P. Lynn, Bloomsburg, for appellant.

Garry E. Wamser, Bloomsburg, for appellee.

BEFORE: STEVENS, LALLY–GREEN, and KLEIN, JJ.

OPINION BY LALLY–GREEN, J.:

¶ 1 Appellant, L.F.F. ("Father"), appeals from the order awarding primary physical custody of his minor son, B.L.F., to Appellee, P.R.F., ("Mother").[1] We affirm.

¶ 2 The trial court found the following facts:

On August 31, 2001, plaintiff [Father] filed a complaint for custody requesting primary physical custody of the parties' minor son, [B.F.], born September 22, 1987. A Special Master was appointed to review the matter and make recommendations. By order of September 18, 2001, the Special Master recommended that plaintiff be granted primary physical custody of [B.F.]. The master recommended defendant be granted primary physical custody of the parties' other minor child, [B.L.F.], born August 28, 1996, with plaintiff to have partial physical custody on alternating weekends, every Wednesday evening after school until 8:00 p.m., certain holidays, and two weeks each summer. It was recommended that [B.F.] should visit with defendant alternating weekends from 6:00 p.m. on Friday until 6:00 p.m. on Saturday at defendant's sister's house.

Plaintiff filed exceptions. Both parties sought primary physical custody of [B.L.F.], while defendant deferred to [B.F.]'s wishes and requested counseling for [B.F.], hoping that counseling would lead to more frequent and more meaningful contact between her and [B.F.]. A full hearing was scheduled and held before this court on June 4, 2002.

At the hearing plaintiff's witnesses included plaintiff himself; Darla Orzo, plaintiff's sister; Kathy Arreola, a friend and neighbor; and Butch Marconi, a friend. Plaintiff presented three exhibits: progress reports and school records for the children and a certificate that plaintiff attended the Kid's First counseling program.

---

1. Father does not appeal the portion of the order awarding Father primary physical custody of his minor son, B.F.

Defendant's witnesses included defendant herself; Chris Aikey, her paramour; and Angela Kipple, her sister. Defendant presented no exhibits.

[B.F.] was questioned by the court, with follow-up questions by counsel for both parties. The court's one exhibit was a psychological evaluation report by psychologist Carol Hidlay. Counsel stipulated to the entry of the report without the necessity of the psychologist's testimony.

## FINDINGS OF FACT

¶ 3 The court finds that the following facts have been proved:

1. Plaintiff is [L.F.F.], age 36, born November 6, 1965. He lives on Main Street, Benton, Columbia County, Pennsylvania, in one side of a double house in a residential area. The house has plenty of room for all occupants, including the children. Plaintiff lives with [B.F.] and, on alternating weekends, with [B.L.F.]. Plaintiff works as a laborer for a masonry contractor, where he has been employed for two months. His hours of employment are normally 7:00 a.m. until 3:30 p.m. Monday through Friday. He is a high school graduate.

2. Defendant is [P.R.F.], age 33. After the parties separated in August of 2001, she lived with her sister and the children for a few weeks. She then moved in with Chris Aikey, who became her paramour. At first she and both children resided with Mr. Aikey. After a brief period of time, [B.F.] moved back with plaintiff. Defendant, Mr. Aikey, and [B.L.F.] all have lived in one side of a double house on State Street, Millvale, Columbia County, Pennsylvania. The house has plenty of room for all occupants, including the children. Defendant works at the Millvale Health Care Center Monday through Friday, normally from 5:30 a.m. until 2:00 p.m.

3. The parties were married April 21, 1986, and separated in August of 2001. There were two children born to the parties: [B.F.], born September 22, 1987, and [B.L.F.], born September 28, 1996. After their separation, defendant retained custody of the two children for a brief period of time. Pursuant to an oral agreement, the parties divided custody of the children, with defendant retaining custody of [B.L.F.] and plaintiff taking primary physical custody of [B.F.]. The parties alternated weekend custody of both children with one parent. However, [B.F.] has infrequently visited with defendant. He refuses to visit defendant's home because of the presence of Mr. Aikey.

4. Chris Aikey has been divorced for three years. He has two children (ages 8 and 5) who primarily live with his ex-wife. By an amicable agreement, he regularly sees his children on Thursday evenings and on alternating weekends. He regularly works as a laborer at Milco Industries, normally Monday through Friday starting around 7:00 a.m. He takes [B.L.F.] to a certified daycare center at 6:45 a.m. The daycare center gets him to kindergarten where he stays until just before noon. He then goes back to the daycare center where defendant picks him up after work at 2:00 p.m. During the summer, [B.L.F.] is at daycare the entire time.

5. [B.L.F.] started kindergarten at the Millvale schools. He was a young kindergarten student and had some academic troubles in school. Thus, the teachers and defendant agreed that it is in his best interest to complete another year of kindergarten. If he lives primarily with plaintiff he will attend Benton schools. Each school is close to the

parties' respective homes in Benton and Millvale.

6. [B.F.] is completing eighth grade at the Benton schools, where he has attended for quite some time. After his parents separated, his grades dropped precipitously. He was clearly preoccupied by the separation and the turmoil between the parties. Through his school, for several months he has attended an alternative program to improve his grades and concentration. His grades have improved dramatically, and he will enter ninth grade at Benton schools in the fall of 2002.

7. Both parties have a significant network of family and friends to supply support and nurture to the children.

8. Defendant's sudden separation from the household in August of 2001 was a traumatic event for the parties and the children, particularly [B.F.]. There was little testimony for the reasons for the departure, although there were clearly severe problems brewing between the parties for quite some time. Defendant filed a PFA, which, although contested by plaintiff, was stipulated upon advice of counsel. Defendant's sudden relationship with another man so shortly after her separation showed poor judgment on her part vis-à-vis the children.

9. Defendant has cancelled too many appointments to visit with [B.F.].

10. Plaintiff has harbored and continues to harbor severe animosity toward defendant and Mr. Aikey. Plaintiff's hate is clearly reflected in the hatred that [B.F.] expresses for Mr. Aikey. [B.F.] is seriously adversely affected by plaintiff's continuing hostile attitude.

11. Mr. Aikey is a hard-working, well-organized person. Although he permitted defendant to move in with him less than two months after the parties' separation, he has done nothing else to realistically alienate [B.F.]. He is nurturing toward [B.L.F.], although not divisive in [B.L.F.]'s relationship with his father.

12. [B.F.], a teenager, has an understandable anger about his mother's precipitous actions in separating and moving in with another man within two months. However, his anger is unnecessarily fueled by his father's extremely hostile attitude. His mother has given plaintiff and [B.F.] fuel for this anger by not conscientiously making all of her scheduled visits with [B.F.].

13. [B.F.] did not visit with his mother for five months until recently.

14. [B.F.] is a fine young man. He is very polite and caring and decent. He expresses love for both his mother and his father. His anger at the situation that he finds himself in is directed at Mr. Aikey, and is somewhat extreme and a bit misplaced. His mother handled the separation poorly and his father has used her poor judgment to help alienate [B.F.] from her.

15. Both of the children have good potential and will have a good future if properly guided and reared by their parents. However, both children need guidance to fulfill their full potential.

16. [B.F.] has indicated that he wishes to stay with Plaintiff. His reasons are well-reasoned under the circumstances. However, [B.F.] wishes to visit with his mother without the presence of Mr. Aikey. This attitude is not well-reasoned and is promoted by his father. Counseling and time will be necessary for this situation to be put into proper perspective for this nice young man.

17. [B.F.] needs to be involved in more extracurricular activities at school and/or outside of school.

18. Both children clearly love and respect both their father and their mother.

19. Both parties have provided the children with love and affection.

20. All of the witnesses in this case are credible.

21. Both parents have been significant caregivers.

22. Both plaintiff and defendant have been loving and caring parents, who sincerely have the best interests of the children at heart.

Trial Court Opinion, 6/6/02, at 1–6.

¶ 4 Father raises one issue on appeal:

Did the trial court err in ordering that primary custody of the younger of the two minor children involved shall be with Appellee rather than Appellant, and concluding that compelling reasons dictate the separation of the two minor siblings?

Father's Brief at 5.

¶ 5 In reviewing custody matters, this Court has stated that our scope of review is very broad. *Richards v. Hepfer,* 764 A.2d 623, 624 (Pa.Super.2000). Nonetheless, a broad scope of review should not be construed as providing the reviewing tribunal with a license to nullify the fact-finding functions of the court of first instance. *Id.* We have stated that an appellate court may not reverse a trial court's custody order absent a showing that the trial court abused its discretion. *T.B. v. L.R.M.,* 567 Pa. 222, 786 A.2d 913, 916 (2001). An abuse of discretion is shown if the law is overridden or misapplied or the judgment exercised is manifestly unreasonable as shown by the evidence. *Commonwealth ex rel. Scanlon v. Scanlon,* 311 Pa.Super. 32, 457 A.2d 98 (1983).

¶ 6 The paramount concern in a child custody case is the best interests of the child. *Douglas v. Wright,* 801 A.2d 586 (Pa.Super.2002); *Wheeler v. Mazur,* 793 A.2d 929 (Pa.Super.2002). A determination of the best interests of the child is based on consideration of all factors which legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well-being. *Wheeler, supra; Wiskoski v. Wiskoski,* 427 Pa.Super. 531, 629 A.2d 996 (1993), *appeal denied,* 536 Pa. 646, 639 A.2d 33 (1994). The court, in determining a custody action, has the obligation to consider all relevant factors that could affect the child's well-being. *Clapper v. Clapper,* 396 Pa.Super. 49, 578 A.2d 17 (1990). On issues of credibility and weight of the evidence, an appellate court defers to the findings of the trial judge, who has had the opportunity to observe the proceedings and the demeanor of the witnesses. *E.A.L. v. L.J.W.,* 443 Pa.Super. 573, 662 A.2d 1109, 1113 (1995).

¶ 7 Moreover, we have determined that, in considering the best interests of a child, one of the factors warranting a change of primary custody from one parent to another is the custodial parent's willingness to cooperate in encouraging the children's relationship with the non-custodial parent. *Roadcap v. Roadcap,* 778 A.2d 687, 690 (Pa.Super.2001).

¶ 8 Father claims that the trial court erred in determining that compelling reasons existed to warrant separation of the two minor brothers. Father asserts that allowing the boys to be raised in two separate households is not in the best interests of the children.

¶ 9 The policy of this Commonwealth is that, where possible, siblings should be raised together absent "compelling reasons" to do otherwise. *Watters v. Watters,* 757 A.2d 966, 969 (Pa.Super.2000). However, this policy is a consideration in, rather than a determinant of, custody arrangements. *Id.* The threshold for examining the meaning of compelling reasons is to ask whether the evidence indicates that it was necessary to separate

the children and whether the evidence was forceful in this regard. *Id.*

¶ 10 The trial court addressed the issue as follows:

In this case, both parents have been loving and devoted to the two children, each in their own manner. However, this court is concerned that father's hostility to defendant and her paramour has already helped to alienate [B.F.]. If plaintiff has primary custody of [B.L.F.], [B.L.F.] may very well fall prey to this same alienation trap. Defendant is more likely to encourage, permit, and allow frequent and continuing contact with the noncustodial parent.

Both parties are able to care for the children, either by themselves or with the help of responsible family members. Both of the parties are hard workers.

Both parties have a support network to help with nurturing the children. Each party has adequate and reasonable care for the children when they are at work.

This court is concerned with the educational future for these children. The children must be given every opportunity to succeed academically. Both parents seem to be addressing these needs with the school authorities. However, [B.F.]'s sudden decline in his academics was borne of the infighting between his parents and should never have occurred. Each needs to be vigilant of their children's education. This court is concerned that a nice young man like [B.F.] is not involved in activities outside of school. He needs to be engaged in activities that allow him to positively develop skills and to avoid being preoccupied with family problems that his parents should be solving without him in the middle.

[B.F.] expressed to this court where they wish to live. [B.L.F.] is too young. . . . [B.F.] has indicated that he wishes to stay with Plaintiff. His reasons are well-reasoned under the circumstances. However, [B.F.] wishes to visit with his mother without the presence of Mr. Aikey. This attitude is not well-reasoned and is promoted by his father. Counseling and time will be necessary for this situation to be put into proper perspective for this nice young man. This court hopes that both parents will act appropriately to help heal [B.F.]'s wounds without inflicting more psychological trauma upon him.

One of the biggest considerations in this case is the separation of [B.F.] and [B.L.F.]. They have been close brothers in spite of the nine year age difference. There is a strong policy in our law that in the absence of compelling reasons to the contrary, siblings should be raised together whenever possible. . . . However, in this case, the court finds that there are compelling reasons for keeping the status quo. Mainly, plaintiff may attempt, consciously or subconsciously, to alienate [B.L.F.] from defendant, as [B.F.] has been unnecessarily alienated. At this point, [B.L.F.] is young enough to have avoided the trauma that [B.F.] has had to endure. This court will not allow the same to happen to [B.L.F.]. With liberal partial custody, both boys can maintain a bond, particularly if [B.F.] is able to visit more frequently with his mother.

This court believes that a custody schedule is needed, whereby both parents can be involved in the children's lives, to the end that they may flourish personally. In establishing this order, this court is considering the following:

1. The concern that [B.F.] has been unnecessarily alienated from his mother and that the same could happen to [B.L.F.].

2. Both parents need to spend significant time with these children

3. The children should spend significant time together.

4. The personal and educational needs of the children need more personal attention.

5. These children need to be involved in extracurricular activities. The parties live close enough that each can help facilitate involvement in activities such as soccer, little league, scouts, band, church, etc.

After consideration of all of the relevant factors, the court finds that the best interest of the minor children would be served by a custody arrangement that provides for shared legal and with primary physical custody of [B.F.] with plaintiff and primary physical custody of [B.L.F.] with defendant, and with each to have significant partial physical custody with the *noncustodial child.*

Trial Court Opinion, 6/6/02, at 7–11 (citations omitted). The court determined that compelling reasons existed to maintain the preexisting separation of the siblings. The record supports this determination.

¶ 11 The court found that Father has harbored and continues to harbor severe animosity toward Mother. Trial Court Opinion, at 5. The report of the court psychologist, Carol Hidlay, supports this finding. *See,* Exhibit 1, Report of Carol Hidlay. The court found that Father's hatred toward Mother is reflected in the hatred B.F. expresses toward Mr. Aikey, the man with whom Mother resides. *Id.* This finding is supported by the record. N.T., 6/4/02, at 78–79, 92. The court also found that B.F. is seriously adversely affected by his Father's extremely hostile attitude. *Id.* at 6. This finding is supported by the record. N.T., 6/4/02, at 28, 30, 71, 73, 74, 88, 89, 92.

¶ 12 Further, the court found that Mother is more likely to encourage, permit and allow B.L.F. to have frequent and continuing contact with Father. *Id.* at 7. This finding is supported by the record. N.T., 6/4/02, at 90. On the basis of these findings, the court concluded that if Father was given custody of B.L.F., he may attempt, consciously or subconsciously, to alienate B.L.F. from Mother the same way that B.F. has been alienated. The evidence of record supports the determination that separation of the siblings was necessary and forceful. Our review of the record reflects compelling reasons to support the conclusion of the trial court. *Watters.*

¶ 13 In summary, the court properly considered factors having an effect upon B.L.F.'s best interests. The trial court also considered other relevant factors that could affect B.L.F.'s well-being, such as Mother's demonstrated willingness to permit continuing contact between B.L.F. and Father and Father's likely negative impact upon B.L.F.'s feelings for Mother. *Clapper; Roadcap.*

¶ 14 Accordingly, as the trial court committed no abuse of discretion, we affirm the order of the trial court awarding primary physical custody of B.L.F. to Mother.

¶ 15 Order affirmed.