J-S28024-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | | |
|---|---|---|---|
| D.L. | : | IN THE SUPERIOR COURT OF | |
| | : | PENNSYLVANIA | |
| Appellant | : | | |
| | : | | |
| | : | | |
| | : | | |
| v. | : | | |
| | : | | |
| | : | | |
| A.G. | : | No. 1830 MDA 2017 | |

Appeal from the Order Entered, November 3, 2017,
in the Court of Common Pleas of Luzerne County,
Civil Division at No(s):  2016-55.

BEFORE:  OLSON, J., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED JULY 11, 2018**

In this matter, Father, D.L., appeals the custody decision that awarded Mother, A.G., primary physical custody and shared legal custody of the parties' seven-year-old son, De.L.  After careful review, we discern no abuse of discretion and affirm accordingly.

We glean from the trial court's Pa.R.A.P. 1925(a) opinion ("T.C.O.") the following procedural and factual disposition:

The parents lived together with the child for the first year or so of his life; they separated in 2011 or 2012.[1]  The child lived primarily with his Mother for approximately the next 18 months.  In June 2013, the parents agreed that the child would live in New York with his Father and Paternal Grandmother in

_____

[1] We do not have the child's date of birth or accurate history of when the parties lived together.  These facts are not necessary for our review in this matter.

Paternal Grandmother's home. But Mother eventually discovered that Father was really living in Wayne County, Pennsylvania with his fiancée even though Father repeatedly told Mother that he was living with the child and Paternal Grandmother in New York. Thereafter, in the summer of 2015, the child lived with Mother in Luzerne County.

In August 2015, Father filed a custody complaint in Wayne County. That fall, the case was transferred from Wayne to Luzerne. In the interim, a Wayne County court limited Father's custody to supervised weekend custody. Evidently, the Wayne County court learned that Father had been charged with endangering the welfare of a child (his non-subject son); he eventually pleaded guilty to simple assault and served about a weeklong prison sentence plus four years' probation.

In May 2016, proceedings commenced in Luzerne County. A master in Luzerne County kept in place the interim supervised custody order and appointed a guardian *ad litem* for the child. Litigation lingered as the court disposed of preliminary questions of venue and granted various continuances and interim requests. A final adjudication of Father's custody complaint spanned two dates in August and October of 2017.

After conducting a proper custody analysis pursuant to 23 Pa.C.S.A. § 5328(a), the trial court granted Mother primary physical custody. The court granted Father partial physical custody every weekend, except the third weekend of the month, which it granted to Mother. During the summer months, the court granted the parties shared physical custody on a week-on-

week-off basis. The court ordered them to share and alternate holidays. Finally, the court ordered the parties to share legal custody. Father presents this timely appeal.

He raises the following issues for our review, which we have reordered for ease of disposition:

> 1. Whether the trial court committed an abuse of discretion and error of law in failing to consider the close bond between the minor child and his half-brothers?
>
> 2. Whether the trial court erred and abused its discretion in considering the recommendation of the guardian ad litem in her testimony and reports when the GAL's testimony is contrary to law that siblings should be raised together and not individualized attention?
>
> 3. Whether the trial court erred and abused its discretion in finding that the child is in a stable environment and thriving when the testimony and evidence was to the contrary?
>
> 4. Whether the trial court erred and abused its discretion in finding [] a great amount of hostility exists between the parents?
>
> 5. Whether the trial court erred and abused its discretion in failing to give Father extra time during the school holidays?
>
> 6. Whether the child custody order appealed from should be reversed where the statutory factors in 23 Pa.C.S.A. § 5328 support the change in custody, and the trial court grossly abused its discretion in making findings of fact and conclusions of law that are unsupported by the record?

Father's Brief, at 6-7.

Our scope and standard of review of an appeal from a custody order is as follows:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must

accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses firsthand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*V.B. v. J.E.B.,* 55 A.3d 1193, 1197 (Pa. Super. 2012) (citations omitted).

When a trial court orders a form of custody, the best interest of the child is paramount. *S.W.D. v. S.A.R.*, 96 A.3d 396, 400 (Pa. Super. 2014) (citation omitted). Section 5338 of the Custody Act (23 Pa.C.S.A. §§ 5321 – 5340) provides that, upon petition, a trial court may modify a custody order if modification serves the best interests of the child. Section 5328(a) sets forth the best interest factors that the trial court must consider:

In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

- 4 -

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a). Trial courts are required to consider all of the factors listed in Section 5328(a) when entering a custody order. **J.R.M. v. J.E.A.**, 33 A.3d 647, 652 (Pa. Super. 2011).

Father's first two issues involve custody factor (6), the child's sibling relationships. **See** 23 Pa.C.S.A. § 5328(a)(6). For support, he cites our holding in **Johns v. Cioci**, 865 A.2d 931 (Pa. Super. 2004) where we said that absent compelling reasons to the contrary, the policy in Pennsylvania is to permit siblings, including half-siblings, to be raised together.

In the past, we have stated it is the policy of this Commonwealth that, where possible, siblings should be raised together absent "compelling reasons" to do otherwise. **L.F.F. v. P.R.F.,** 828 A.2d 1148, 1152. (Pa. Super. 2003) (**citing Watters v. Watters,** 757 A.2d 966, 969 (Pa. Super. 2000)); **see also Pilon v. Pilon**, 492 A.2d 59, 60 (Pa. Super. 1985)("Absent compelling reasons to separate siblings, they should be reared in the same household to permit the 'continuity and stability necessary for a young child's development.'"). "However, this policy is a consideration in, rather than a determinant of, custody arrangements." **L.F.F.,** 828 A.2d at 1152-1153 (affirming the trial court's determination that compelling reasons existed to maintain the **pre-existing separation** of the siblings) (emphasis added).

These cases predate the enactment of the current Child Custody Act. Their holdings retain persuasive value, but Section 5328(a) does not require a court to presume siblings should be raised together; this "policy" has been assimilated into Section 5328(a)(6). **See e.g. P.J.P. v. M.M.,** 2018 Pa.

Super. 100, 2018 WL 1979832, (Pa. Super. April 27, 2018) (holding that the shared custody factors set forth in **Wiseman v. Wall**, 718 A.2d 844, (Pa. Super. 1998), assimilated into the custody factors set forth in 23 Pa.C.S.A. § 5328(a)).

Moreover, while the child is only a few years younger than his half-siblings, the child has lived primarily with Mother – and apart from the siblings – throughout his life. If Father was the primary custodian, the child and his siblings would not attend the same school. The unfortunate effect of the custody arrangement ordered by the trial court is that the child could potentially miss spending time with his siblings; the siblings will be in the partial custody of their mother when Father exercises his partial custody of the child. However, they will spend a considerable amount of time together in the summer when school is out. The trial court did not abuse its discretion for failing to make this factor dispositive. Because Father misstates the law, the trial court did not err when it agreed with the GAL's recommendation and afforded this factor less weight.

Next, Father challenges the trial court's conclusion that the child was "thriving" while in Mother's care. The argument appears to contest the court's findings as to factor (3), the parental duties performed by each party on behalf of the child, and factor (4), the need for stability and continuity in the child's education, family life and community life. **See** 23 Pa.C.S.A. § 5328(a)(3); (a)(4). Father asserts that the court "ignored evidence" from when the parties lived together when the child was an infant. **See** Father's Brief, at 21. The

trial court found: "Both parties love and care for [the child] and share the same interest in seeing to it that he has the best of both worlds. In considering the best interests of the child, [the child] is in a stable environment and thriving." *See* T.C.O., at 8. Moreover, the GAL, who conducted home visits in each household, also opined that the child was thriving while in Mother's care. We recognize that the GAL also testified that the child's half-siblings are thriving in Father's care.

Father frames the discussion of this issue as a battle of amenities. While living with Mother, the child must attend daycare, but would not have to if he lived with Father. Mother rents an apartment. Father owns a home near a sports complex, pools and parks. *See* Father's Brief, at 22. But the parties' standard of living is not a custody factor. Furthermore, the context for this discussion really involves the stability of the child, who evidently bounced between households as a younger child. At the time of the hearing, his living situation had become more stable.

The trial court found that Mother had been the primary custodian throughout the child's life except for the brief time the child was supposed to be living in New York. In this role, Mother performed the lion's share of the parental duties and had long attended to the child's emotional and developmental needs. *See* 23 Pa.C.S.A. § 5328(a)(3). The court determined that the child was doing well and saw no reason to disturb this environment in favor of the comforts that might be more readily available in Father's home. It was not an abuse of discretion for the trial court to discount Father's

amenities in favor of the consistency the child receives while in Mother's primary care.

Next, Father takes issue with the court's finding that there is a great deal of conflict between the parties. *See* 23 Pa.C.S.A. § 5328(a)(13). Father argues that Mother is the source of the hostility, and that it was erroneous of the court to infer otherwise. However, when discussing this factor, the court merely noted the source of the parties' conflict is Mother's apparent distrust of Father. The court found that the distrust stemmed from the bold lie Father told Mother about the whereabouts of the child during the time he had primary custody. We note that the trial court is uniquely suited to adjudicate the level of conflict of the parties. Here, although the court noted the source of the conflict, it gave this conflict little weight in the final decision. Nothing in the record suggests that the court held this conflict against Father. If anything, the court explained Mother's distrust was justified by Father's conduct, but it did not weigh this factor in favor of either party. The court only cautioned the parents that as the child grows older, the parents' level of conflict will lead to future problems for him. We find the court's analysis of this factor did not constitute an abuse of discretion.

Father's next contention is that the court's custody arrangement should have provided him extended time during the holidays given his limited partial custody during the school year. The GAL recommended the same, but the court departed from this recommendation. We note that the court is "under no obligation to delegate its decision-making authority" to a custody

evaluator. *See M.A.T. v. G.S.T.,* 989 A.2d 11, 19-20 (Pa. Super. 2010) (*en banc*). It goes without saying that holiday times are special experiences for children and families. In alternating the holidays, the court ensured that the child will enjoy spending time and creating memories with each parent equally. By ordering the parties to share custody during the summer months, the court clearly sought to bolster the child-father relationship when possible. Evidently, the court also found that awarding one parent more holiday time would not be fair to the child. We find that the court's decision to keep equal the parties' holiday time was not an abuse of discretion.

Finally, Father presents a catchall issue – that several of the court's custody findings pursuant to § 5328(a) were against the weight of the evidence. We disagree and discuss below the remainder of the issues Father specifically contests. Considerable discussion has been dedicated to Father's criminal history. *See* Father's Reply Brief, at 4; *see also* 23 Pa.C.S.A. § 5328(a)(2). Despite a history of past child abuse toward the half-sibling, the trial court was satisfied by Father's testimony that he has reformed his disciplinary tactics, and it concluded that Father does not pose a present threat to the child or his siblings. It did not appear that the Court even weighed this factor against Father. The evidence supports this conclusion.

Father also challenges the court's finding that Mother is more likely to encourage and permit frequent and continuing contact, per 23 Pa.C.S.A. § 5328(a)(1). *See* Father's Reply Brief, at 1. The trial court noted that Mother allowed Father to see the child beyond what the prior custody order required.

- 10 -

Father argues that Mother only offered additional time when she was in a pinch and needed Father to watch the child. *Id.* While the court found this factor favored Mother, it did not appear the court gave it significant weight either.

The reality of this case is that the parties reside 45 miles (an hour) away from one another. Given that the child is now school age, and that the parties live so far apart, any sort of shared custody arrangement during the school year is untenable. In his brief, Father says the court found the factor concerning the proximity of the residences to be "neutral." *See* § 5328(a)(11); *see also* Father's Brief, at 28. That is not quite right. The trial court only found that transportation between the households is not a problem. *See* T.C.O., at 12.

But if custody were to be shared during the school year, we can infer that there would be days where the child would have to spend two hours in a car going back and forth to school; either the custodial parent would have to spend four hours traveling, or, if the parties shared this burden, then each would have to spend two hours in the car each school day for the duration of the school year. Clearly, the court, based on logistics, was forced to pick a primary custodian.

In this respect, Factor 11 (the proximity of the parties' residences) necessitates that other factors be weighted more heavily than perhaps they otherwise would have been. Here, a great many of the factors were found to be neutral. The court found both parents are likely to provide a loving,

nurturing home and both are likely able to attend to the child's daily developmental needs. **See** § 5328(a)(9)-(10). But the court found that Mother has long been the child's primary caregiver. And in that role, Mother has largely been the parent who has performed parental duties. Keeping Mother as the primary custodian has the benefit of keeping the child's life stable. If the parties lived two streets away from another, perhaps the trial court's analysis would have resulted in a different custody arrangement. Each case is different. We cannot delineate a rule that arbitrarily chooses a certain mile or minute point – when the distance between the parents' homes becomes too great – such that a finding of shared custody must yield to a finding of primary custody. But in this instance, given the distance between the parties, the court did not err when awarding Mother primary custody where most of the other factors were neutral.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/11/2018