J-A08044-19

2019 PA Super 229

| | | |
|---|---|---|
| D.R.L. AND D.L. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellants | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| K.L.C. AND J.C. | : | No. 1625 WDA 2018 |

Appeal from the Order Dated October 17, 2018
In the Court of Common Pleas of Washington County Civil Division at
No(s):  No. 2016 – 6488

BEFORE:  PANELLA, P.J., STABILE, J., and McLAUGHLIN, J.

OPINION BY McLAUGHLIN, J.:                    **FILED JULY 26, 2019**

D.R.L. and D.L. (collectively, "Paternal Grandparents") appeal from the October 17, 2018 order entered in the Court of Common Pleas of Washington County, which denied Paternal Grandparents' Exceptions to the Custody Hearing Officer's Report regarding their minor grandchild, K.P.L. ("Child"). We affirm.

The Child was born on April 16, 2008 to K.C. ("Mother") and M.L. ("Biological Father"). When the Child was two years old, Mother and Biological Father separated. Mother had primary custody of the Child after the separation. Mother and J.C. ("Adoptive Father") were married on August 10, 2013. Biological Father died on March 24, 2016. Adoptive Father legally adopted the Child on May 30, 2017. The Child has a 5-year old half-brother from Mother and Adoptive Father. Prior to court involvement, Mother informally allowed the biological Paternal Grandparents to have visitation with

the Child every other weekend and during the summer for vacation. Paternal Grandparents filed for partial custody on October 21, 2016 and the parties reached a Custody Consent Order dated January 20, 2017. The Consent Order stated that Mother would maintain primary physical and sole legal custody of the Child, and Paternal Grandparents would enjoy partial physical custody every other weekend, half-day on Easter, half-day on Father's Day, all day on Christmas Eve, seven days' vacation during the summer, and additional time when the Child's cousins from Georgia were in town. Paternal Grandparents were also permitted to contact the Child by telephone at reasonable times through FaceTime or other means.

On December 11, 2017, Paternal Grandparents filed a Modification of Custody. The parties went through a custody conciliation conference in April of 2018, followed by two days of testimony in front of Custody Conference Officer David Rundquist ("CCO") concluding on May 3, 2018. The CCO heard testimony from Paternal Grandparents, Mother, Adoptive Father and the Child. The trial court entered an Order on June 6, 2018, which stated that the previous Consent Order of January 20, 2017 would continue to control except that Paternal Grandparents were to be afforded two non-consecutive weeks of vacation with the Child during the summer. Paternal Grandparents then filed Exceptions to this Order on June 25, 2018. Exceptions were heard before the trial court on October 10, 2018. The trial court denied the Exceptions. Paternal Grandparents then filed the instant appeal raising the following three issues:

I. Did the lower court err by indicating its bias in its assertion that appellant's [sic] "would seek to keep the memory of the [C]hild's biological father alive" through [Child] among other commentary?

II. Did the lower court err by incorrectly considering the "best interests" and in the time spent by grandparents with [Child] and all of the appellant's [sic] relatives which have played a part in [Child's] life and development?

III. Did the trial court err by incorrectly considering the issue of interference as time away from Appellee/[M]other?

Paternal Grandparent's Br. at 5 (suggested answers omitted).

We apply the following standard of review when reviewing a custody decision:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*V.B. v. J.E.B.*, 55 A.3d 1193, 1197 (Pa.Super. 2012) (citations omitted).

The Child Custody Act provides that grandparents may file an action for partial physical custody or supervised physical custody in certain situations, including where the parent of the child is deceased. 23 Pa.C.S.A. § 5325(1). We have emphasized that the burden is on the grandparents "to demonstrate

- 3 -

that partial custody or visitation in their favor is in the child's best interest and will not interfere with the parent-child relationship." **Douglas v. Wright**, 801 A.2d 586, 590-91 (Pa.Super. 2002). The paramount concern in custody cases, "including those in which grandparents are seeking rights, is the best interests of the child." **Id.** at 591. "A determination of the best interests of the child is based on consideration of all factors which legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well-being." **L.F.F. v. P.R.F.**, 828 A.2d 1148, 1152 (Pa.Super. 2003).

Section 5328(a) of the Child Custody Act enumerates sixteen factors that the court must consider when making an order of custody. Specifically, it states:

> **(a) Factors.--**In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:
>
> (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
>
> (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.
>
> (2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).
>
> (3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

Further, in ordering partial physical custody or supervised physical custody to a grandparent who has standing under section 5325(1), the court must consider:

> (i) the amount of personal contact between the child and the party prior to the filing of the action;
>
> (ii) whether the award interferes with any parent-child relationship; and
>
> (iii) whether the award is in the best interest of the child.

23 Pa.C.S.A. § 5328(c)(1). Therefore, "when deciding an award of custody, the court must conduct a thorough analysis of the best interests of the child based on the factors set forth in the Act." *K.T. v. L.S.*, 118 A.3d 1136, 1160 (Pa.Super. 2015). All of the sixteen "best interest" factors set forth in Section 5328(a), as well as the three statutory custody factors pertaining to grandparents listed in Section 5328(c)(1), are required to be considered by the trial court when grandparents are seeking custody rights. *Id.* at 1154, 1162. However, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." *Id.* at 1160 (quoting *M.J.M. v. M.L.G.,* 63 A.3d 331, 336 (Pa.Super. 2013)).

In the instant case, the learned trial court, relying on the CCO's recommendations, thoroughly addressed all of the sixteen factors set forth in Section 5328(a), as well as the three factors listed in Section 5328(c)(1). After review of the record, we conclude initially that the trial court properly conducted a detailed analysis of the best interests of the Child based on the

factors set forth in the Child Custody Act and its findings and determinations are supported by competent evidence in the record.

Specifically, with regard to factor one under Section 5328(a) (which party is more likely to encourage and permit frequent and continuing contact between the child and another party), the trial court found that neither party had discouraged frequent and continued contact between the Child and her family members since the entry of the Consent Order. On the contrary, Paternal Grandparents had been afforded partial custody every other weekend, over certain holidays, and vacation time, as well as FaceTime contact with the Child. Even before any court intervention occurred, Mother permitted frequent and continued contact between Paternal Grandparents and the Child. The court determined that there was no evidence presented that such contact would not continue. The court maintained that although it was understandable that Paternal Grandparents would like more time with the Child, it was clear that they have enjoyed frequent and continued contact. The court found that it was reasonable that Mother and Adoptive Father did not want to further expand Paternal Grandparents' custodial periods, as it would infringe upon their own custodial periods, the relationship between the Child and her half-sibling, and their ability to visit with their respective families.

Regarding factor two (the present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child) and factor 2.1 (relating to

consideration of child abuse and involvement with protective services), the court found that neither party presented any evidence that suggested any abuse in either household or that child protective services had been involved in either household.

As to factor three under Section 5328(a) (the parental duties performed by each party on behalf of the child), the court concluded that Mother and Adoptive Father performed all of the parental duties. Similarly, as to factor four (the need for stability and continuity in the child's education, family life and community life), the court found that Mother and Adoptive Father, who have been the Child's primary caregivers, should continue to enjoy primary physical custody to ensure the Child's stability. The court, however, maintained that Paternal Grandparents' relationship with the Child should continue, as they have always had a consistent relationship with the Child.

Regarding factor five under Section 5328(a) (the availability of extended family), the court considered that a number of Mother and Adoptive Father's relatives live in the nearby area, including maternal grandmother, maternal great-grandparents, maternal aunts and maternal uncles, as well as Adoptive Father's parents, his grandmother, his aunts, his sister, his niece, and his nephew. The court further took into account that one paternal uncle lived in the area with his children, and that paternal cousins from Georgia visit the area yearly and have vacationed with the Child. The Child also attends school with a paternal cousin, with whom she shares a close relationship.

With respect to factor six under Section 5328(a) (the child's sibling relationships), the court considered testimony that the Child loves and misses her half-brother when she is away from him during custodial visits with Paternal Grandparents.

As to factor seven (the well-reasoned preference of the child, based on the child's maturity and judgment), the court noted that the Child testified before the CCO and that the CCO found the Child to be quite mature for her age of ten. The Child testified that neither party attempted to influence her and that she understood the need to tell the truth. The CCO determined that the Child clearly loves Paternal Grandparents but that she did not want to expand the current custody schedule with them. Specifically, the CCO stated in his Summary Report of the Child Custody Conference Officer in Support of Recommended Order ("Summary Report"):

> When questioned about the current custody schedule, [the Child] indicated that it is sufficient, noting that she misses her half-brother, Mother, and [Adoptive Father] when she is away. In connection with the visit by her cousins from Georgia this past year, she asserted that she had sufficient time to visit them. Indeed, she pointed out that she vacationed with them a short while later.
>
> The [C]hild, who clearly has had some difficulty with the death of her biological father, expressed happiness with her adoption by [Adoptive Father]. She chose to hyphenate her name with [Adoptive Father's] last name as she reasonably did not want to be the only one in the household not to have [Adoptive Father's last name] as part of her name.
>
> Although the [C]hild unquestionably loves Paternal Grandparents, she clearly has a preference to spend time with her Mother, her [A]doptive [F]ather, and her half-brother while at the same time continuing contact with

> Paternal Grandparents at essentially the current level. Under the circumstances of this case, the [C]hild's preference is reasonable.

Summary Report para. 7.

Regarding factor eight (the attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm), the court found that there was no evidence presented that any party had attempted to turn the Child against the others.

As to factor nine under Section 5328(a) (which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs), the court determined that Mother and Adoptive Father are clearly more likely to maintain a loving, stable, consistent, and nurturing relationship with the Child for her emotional needs because they have been her primary caregivers and have consistently addressed her basic needs. The court found that while Paternal Grandparents have been a consistent and loving presence in the Child's life, the Child is more connected to her Mother and Adoptive Father.

Regarding factor ten (which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child), the court found that Mother and Adoptive Father are more likely to attend to the daily physical, emotional, developmental, and educational needs of the Child as her primary caregivers; however, Paternal Grandparents have performed the Child's daily needs when they have custody of her.

As to factor eleven (the proximity of the residences of the parties), the court noted that the parties reside close to one another.

Regarding factor twelve (each party's availability to care for the child or ability to make appropriate child-care arrangements), Mother and Adoptive Father had presented evidence that in the event they are in need of childcare, they rely upon maternal grandmother to provide it. Further, there was no evidence presented suggesting that Paternal Grandparents do not have the ability to obtain appropriate child-care arrangements if necessary.

With regard to factor thirteen under Section 5328(a) (the level of conflict between the parties and the willingness and ability of the parties to cooperate with one another), the court found that the relationship between the parties deteriorated since the entry of the Consent Order, as Mother believed that a specific order interfered with her parental discretion. However, Paternal Grandparents concluded that they needed a specific order to ensure that their custodial time was guaranteed. It was undisputed that neither party attempted to diminish the other in the eyes of the Child.

As to factor fourteen (the history of drug or alcohol abuse of a party or member of a party's household), the court found there was no testimony presented that suggested any party or member of their household had a problem with abusing drugs or alcohol. Similarly, regarding factor fifteen (the mental and physical condition of a party or member of a party's household), there was no evidence presented that suggested any party had a mental or physical condition affecting their ability to care for the Child.

As to factor sixteen under Section 5328(a) (any other relevant factor), the CCO stated in his Summary Report:

> This is an unusual case involving grandparent rights in connection with an intact family, albeit one with an adoptive father. That being said, there has been a longstanding relationship between Paternal Grandparents and the [C]hild, one that even Mother has acknowledged is important and should be preserved. Although Paternal Grandparents seek to obtain additional time with the [C]hild, any additional time that they might receive would necessarily take away time from the [C]hild's relationship with her brother and parents. It is quite understandable that Paternal Grandparents would seek to keep the memory of the [C]hild's biological father alive and maintain her contact with his family. However, even the [C]hild has concluded that the time that she spends with Paternal Grandparents is adequate. Thus, other than addressing some uncertainty to make clear the specific obligations of the parties and hopefully avoid additional conflict, this Conference Officer is not recommending any expansion in Paternal Grandparent's [sic] partial custody periods.

Summary Report para. 16.

Within its well-reasoned opinion, the trial court also addressed the three statutory custody factors pertaining to grandparents listed at Section 5328(c)(1). Factor (i) of Section 5328(c)(1) requires the court to determine the amount of personal contact between the child and the party prior to the filing of the action. Here, the court found that Paternal Grandparents have had a longstanding and loving relationship with the Child prior to the filing of this action. Indeed, the court found that even before any court intervention occurred, Mother permitted frequent and continued contact between Paternal

Grandparents and the Child. However, the court noted that Mother has always been the primary caregiver of the Child.

Factor (ii) of Section 5328(c)(1) requires the court to consider whether an award of custody to grandparents would interfere with any parent-child relationship. Instantly, the court found it was reasonable that Mother and Adoptive Father did not want to expand Paternal Grandparents' custodial periods, as it would infringe upon their own custodial periods, the relationship between the Child and her half-sibling, and their ability to visit with their respective families. The CCO further stated:

> While Paternal Grandparents have attempted to address co-parenting issues such as counseling for the [C]hild to address issues with the death of her biological father and have indicated that they would like to see the [C]hild in dance, Mother reasonably believes that those efforts are inappropriate interference in her role as the parent. This Child Custody Conference Officer cannot fault Mother for such a belief, noting that she ultimately got the [C]hild involved with a therapist and that the [C]hild obtains therapy as needed.

Summary Report para. 10.

Factor (iii) of Section 5328(c)(1) requires the court to determine whether the award is in the best interest of the child. After analyzing all of the custody factors, as well as the testimony from all relevant witnesses, the court concluded that it would not be in the best interest of the Child to expand Paternal Grandparents' custodial periods with the Child. Rather, the court found that the Custody Consent Order dated January 20, 2017 should remain

in full force and effect, except for a few minor changes regarding summer vacation time.

In their first issue raised on appeal, Paternal Grandparents contend that the CCO was biased against them when he stated that "[i]t is quite understandable that Paternal Grandparents would seek to keep the memory of the [C]hild's biological father alive and maintain her contact with his family." Paternal Grandparent's Br. at 12. Paternal Grandparents also assert that the CCO was biased when he stated that they have an immense burden to overcome in seeking partial custody of the Child. *Id.* at 11. The trial court reviewed the relevant testimony and reports from the CCO's hearing and found that there was no evidence of bias on the part of the CCO.  We agree.

When the CCO stated that Paternal Grandparents were seeking to keep the memory of their son alive, the CCO did not say anything disparaging or biased toward them but rather explained that it was "quite understandable" that Paternal Grandparents would want to keep the memory of Child's biological father alive. Further, Paternal Grandparents' own case that they cite, **Douglas v. Wright**, belies their assertion that the CCO was incorrect in stating that Paternal Grandparents have the burden to overcome in seeking partial custody rights. Specifically, we stated in **Douglas** that the burden is on the grandparents "to demonstrate that partial custody or visitation in their favor is in the child's best interest and will not interfere with the parent-child relationship." **Douglas**, 801 A.2d at 590-91. Notably, Paternal Grandparents fail to cite to any legal authority or case law that supports their claim regarding

bias. We conclude that there is no evidence in the record that the CCO was biased against Paternal Grandparents.

Paternal Grandparents next contend that the trial court failed to address the best interests of the Child and failed to consider the long history of Paternal Grandparents' involvement with the Child. Paternal Grandparent's Br. at 16-18. This is manifestly incorrect. As previously discussed, the trial court exhaustively analyzed and addressed all of the sixteen "best interest" factors set forth at Section 5328(a), as well as factor (iii) (whether the award is in the best interest of the child) under Section 5328(c)(1). Further, despite Paternal Grandparents' contention, the trial court clearly considered the longstanding and loving relationship between Paternal Grandparents and the Child. The trial court observed that even before any court intervention occurred, Mother permitted frequent and continued contact between Paternal Grandparents and the Child. It was undisputed by the parties that Paternal Grandparents' role in the Child's life should continue. Paternal Grandparents have been afforded substantial partial physical custody of the Child and Mother has never denied Paternal Grandparents contact with the Child. The trial court also considered that the Child's reasoned preference was to continue with the current custody arrangement with Paternal Grandparents and not increase their custodial periods. Specifically, when asked if she wanted to spend more time at her grandparents' house, the Child testified:

> THE MASTER: Do you feel like you want more time to go to grandma's?

[CHILD]: Well, I like how the summer schedule is, and I like how our normal schedule is. So, no, not really. Just because, like, I like what we have now. And the summer schedule, my cousins come down from Georgia, and I get a few extra days to spend there with them.

…

THE MASTER: Okay. Now, when you talk about the schedule -- okay, are you talking about just every other weekend? I mean, is that sufficient -- do you feel like you have sufficient amount of time every other weekend to spend with Grandma and Grandpap?

[CHILD]: Yes.

N.T., 5/3/18, at 98-99.

This Court has stated:

Although the express wishes of a child are not controlling in custody decisions, such wishes do constitute an important factor that must be carefully considered in determining the child's best interest. The weight to be attributed to a child's testimony can best be determined by the judge before whom the child appears. The child's preference must be based upon good reasons and his or her maturity and intelligence must also be considered.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa.Super. 2006) (internal citations and quotations omitted). The trial court's findings regarding the Child's best interest are supported by the record and its conclusions from the evidence are reasonable.

Lastly, Paternal Grandparents assert that the trial court erred by incorrectly considering the issue of interference as time away from Mother. Paternal Grandparent's Br. at 18. As previously explained, the trial court analyzed the issue of interference and found that increasing the current custodial time with Paternal Grandparents would interfere with Mother and

Adoptive Father's relationship with Child, the relationship between the Child and her half-sibling, and their ability to visit with their respective families. Further, the trial court noted that Paternal Grandparents have attempted to address co-parenting issues on at least two occasions, namely by suggesting that the Child should attend therapy and that she should be enrolled in dance classes. The court found that Mother reasonably believed these attempts to be an inappropriate interference in her role as the Child's parent. The record supports the trial court's finding.

In sum, we interpret the crux of Paternal Grandparents' claims as disputes with the trial court's findings of fact and determinations regarding credibility and weight of the evidence. Paternal Grandparents essentially ask this Court to re-find facts, re-weigh evidence, and re-assess credibility. That is not our role. **See E.R. v. J.N.B.**, 129 A.3d 521, 527 (Pa.Super. 2015). As evidenced by the trial court's opinion, the trial court performed a detailed and thorough analysis of the Child's best interests. The trial court's findings and determinations are supported by competent evidence in the record and we will not disturb them. Accordingly, we conclude that the trial court did not abuse its discretion by declining to expand Paternal Grandparents' custodial periods with the Child.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  7/26/2019