J-A08045-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| C.D. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| T.M. | : | No. 1655 WDA 2018 |

Appeal from the Order Dated October 24, 2018
In the Court of Common Pleas of Indiana County Civil Division at No(s):
11074 C.D. 2014

BEFORE:  PANELLA, P.J., STABILE, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED JULY 26, 2019**

C.D. ("Father") appeals from the custody order that awarded primary physical custody of A.D. and B.D. ("Children") to T.M. ("Mother") and partial physical custody to Father. Mother and Father were awarded shared legal custody. We affirm.

The Children, who are twins, were born to Mother and Father on April 14, 2011, in Massachusetts. The family moved to Pennsylvania when the Children were two months old. While in Pennsylvania, the family moved multiple times due to financial and personal reasons. In late 2013, Father moved to Massachusetts for a job opportunity and Mother and the Children stayed in Pennsylvania. Mother and Father continued a long-distance relationship for a few months while Father was in Massachusetts but eventually decided to end their relationship. After they separated, Mother was

the Children's primary caregiver and the Children remained in Pennsylvania with her. Father eventually married A.D. ("Stepmother").

Father filed for custody on July 7, 2014 in Indiana County, Pennsylvania. The parties entered into a Custody Consent Order on March 24, 2015, in which Mother retained primary physical custody of the Children and both parties shared legal custody of the Children. Further, the Consent Order stated that Father had partial physical custody of the Children for one weekend per month during the school year and one full week in June, July, and August, with the holidays split between the parties.

On October 9, 2015, Father filed a Petition for Modification. The parties eventually entered into a second Custody Consent Order on June 27, 2016, in which the parties continued to share legal custody of the Children, Mother continued to have primary physical custody, and Father continued to have partial physical custody. Further, Father's visitation schedule during the school year was one weekend per month in Massachusetts and one additional weekend per month if Father traveled to Pennsylvania for the visit. Father also had partial physical custody of the Children for ten days in June, twelve days in July, and six days in August.

Shortly after the entry of the June 27, 2016 Consent Order, Mother agreed to move to Massachusetts with the Children on a trial basis for up to one year. Things went well and the parties were amicable for the first few months after Mother and the Children moved to Massachusetts. However, after living in Massachusetts for ten months, Mother was in a car accident that

left her without a vehicle and impacted her ability to work. Mother decided to return to Pennsylvania with the Children due to the lower cost of living and the availability of family support in Pennsylvania. In spring of 2017, Father filed a Petition to Transfer Jurisdiction in Massachusetts. A court in Massachusetts declined jurisdiction and gave Mother and the Children 45 days to leave Massachusetts. Mother and the Children retuned to Pennsylvania shortly after this order was entered to live with her mother ("Maternal Grandmother") and stepfather ("Maternal Step-Grandfather"). Father filed an Emergency Petition for Special Relief and a Petition to Transfer Jurisdiction in Pennsylvania requesting that the Indiana County Court of Common Pleas transfer jurisdiction to Massachusetts. On August 10, 2017, the Indiana County Court of Common Pleas denied Father's Petitions and stated that the June 27, 2016 Consent Order remained controlling.

On August 23, 2017, Father filed a Petition for Modification requesting more time with the Children. The parties engaged in mediation but were unable to come to an agreement. On February 1, 2018, the trial court issued an order appointing Dr. Carolyn Menta to serve as the custody evaluator in the case. Dr. Menta conducted a complete analysis of both parties, the parties' significant others, Maternal Grandmother and Maternal Step-Grandfather, and the Children. On May 11, 2018, Dr. Menta issued an initial report and recommended that the current custody arrangement should continue with Mother having primary physical custody of the Children (the "Initial Report").

Dr. Menta strongly recommended that Father and Stepmother consider moving to Pennsylvania to make a 50-50 custody arrangement more possible.

Shortly after the Initial Report was issued, Mother's living situation changed. Mother and the Children were living with Maternal Grandmother and Maternal Step-Grandfather. However, Maternal Grandmother and Maternal Step-Grandfather unexpectedly separated and Mother was given 24-hours' notice to vacate her Step-Grandfather's home. Mother then moved with the Children to a single-family home in a different school district. In light of these changes, Father requested that Dr. Menta update her report. On August 2, 2018, three months after her Initial Report was issued, Dr. Menta updated her report and reversed her recommendation to Father having primary physical custody in Massachusetts ("Updated Report"). In her Updated Report, Dr. Menta believed that Father would be able to provide the Children with a more stable home. Dr. Menta was concerned about Mother's sudden move, the availability of Mother's support system, and the transitions the Children went through so quickly.

The trial court held a custody hearing on October 1 and 2, 2018, in which the court heard testimony from Mother, Father, Stepmother, Dr. Menta, the Children, and the Children's two therapists. On October 25, 2018, the trial court issued an opinion and order, which awarded primary physical custody of the Children to Mother in Pennsylvania, with Father having additional time with the Children during the summer months. Father then filed the instant appeal raising the following four issues:

- 4 -

I. Whether the Trial Court erred in determining that the best interests of the [C]hildren are met by awarding primary physical custody to [Mother].

II. Whether the Trial Court erred in finding competent evidence existed to not follow the recommendation of the child custody evaluator.

III. Whether the Trial Court erred by failing to adequately address all relevant custody factors, specifically by failing to address that Mother's paramour is currently on probation for an offense of driving under the influence.

IV. Whether the Trial Court erred by relying on testimony provided by [Mother's] witnesses from Family Behavior Resources after sustaining Counsel for [Father's] objections during trial.

Father's Br. at 20 (suggested answers omitted).

We apply the following standard of review when reviewing a custody decision:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

***V.B. v. J.E.B.***, 55 A.3d 1193, 1197 (Pa.Super. 2012) (citations omitted).

In his first issue raised on appeal, Father argues that the trial court erred in determining that the best interests of the Children were met by awarding primary physical custody to Mother. We disagree.

The paramount concern when a trial court orders a form of custody is the best interests of the child. **S.W.D. v. S.A.R.**, 96 A.3d 396, 400 (Pa.Super. 2014). "A determination of the best interests of the child is based on consideration of all factors which legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well-being." **L.F.F. v. P.R.F.**, 828 A.2d 1148, 1152 (Pa.Super. 2003). Specifically, the factors that a trial court must consider when awarding custody are set forth at 23 Pa.C.S.A. § 5328(a) of the Child Custody Act, which provides:

> **(a) Factors.--**In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:
>
> (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
>
> (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.
>
> (2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).
>
> (3) The parental duties performed by each party on behalf of the child.

- 6 -

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

In the instant case, the trial court considered all of the custody factors set forth in 23 Pa.C.S.A. § 5328(a). It found that twelve of the factors were

neutral between Mother and Father, namely factors one, two, four, six, seven, eight, nine, eleven, twelve, thirteen, fourteen and fifteen. The court concluded that the remaining factors (factors three, five, ten, and sixteen) favored Mother.

Father contends that the trial court erred when it determined that factors three, five, ten, and sixteen favored Mother. More specifically, Father asserts that the court erred when it found that factor three (the parental duties performed by each party on behalf of the child) favored Mother. Father states that the trial court "has essentially created an impossible standard for any parent to be favored in this factor if prior to the hearing the other party has primary custody." Father's Br. at 28. Father also asserts that the court erred when it found that factor five (the availability of extended family) favored Mother. He argues that this factor, at the very least, should have been considered neutral between the parties, as he has extended family in Massachusetts. Additionally, Father contends that the trial court erred when it found that factor ten (which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child) favored Mother. He states that there is nothing in the record to suggest that Father is unlikely to attend to the needs of the Children. Further, Father argues that that the trial court erred when it found that factor sixteen (any other relevant factor) favored Mother. Father essentially claims that the trial court placed undue weight on the fact that Mother has served as the Children's primary

caretaker. He contends that this factor only favors Mother due to the distance between the parties.

Father additionally argues that the trial court should have found factors four (the need for stability and continuity in the child's education, family life and community life), six (the child's sibling relationships), fourteen (the history of drug or alcohol abuse of a party or member of a party's household), and fifteen (the mental and physical condition of a party or member of a party's household) in Father's favor and not as neutral factors. Father offers little support for this position except to essentially argue that he and Stepmother can provide more stability for the Children than Mother can.

The trial court carefully considered all of these factors in its opinion. Specifically, in considering factor three, the trial court observed that both parties were capable of performing parental duties. However, the court found that, based upon the testimony, Mother has been more involved in the parental duties and has been the Children's primary caretaker since their birth. The court stated that despite the number of moves that the Children have had, the one constant in their lives has been Mother's presence.

As to factor five, the trial court recognized that both parties have extended family in their respective states. However, the court determined that factor five slightly favored Mother because the Children have had a relationship with Mother's family since birth and they have a strong bond with Maternal Grandmother.

In determining factor ten, the trial court found, after considering all of the testimony, that this factor slightly favored Mother. Specifically, the court stated:

> Both Parties stated they were more likely to attend to the daily physical, emotional, developmental, and educational needs of the [C]hildren. Father testified to his flexible military schedule and that Stepmother works at a school and therefore is available when the [C]hildren are not in school. Father had the name of the school where the [C]hildren would attend if he were to be granted custody. Father also stated there was an afterschool program available for childcare if needed.
>
> Mother has attended to the [C]hildren's needs since birth and has been actively involved in their education, health, and social needs. Mother testified to attending extracurricular activities, going to school meetings, and going doctor's appointments with the [C]hildren. She also currently takes the [C]hildren to their counseling sessions. Because of the significance of Mother in the [C]hildren's lives so far, the Court finds this factor slightly favors Mother.

Trial Court Opinion, filed Oct. 25, 2018, at 19.

In reviewing factor sixteen, the trial court found that since Mother has a strong bond with the Children and has acted as their primary caregiver throughout their entire lives, factor sixteen favors Mother. The trial court recognized that in *M.J.M. v. M.L.G.*, 63 A.3d 331 (Pa.Super. 2013), we held that a court cannot give any additional weight to one parent because of his or her own role as the primary caretaker. *Id.* at 338-39. This was because the clear language of the Child Custody Act provides that all relevant factors shall be considered by the trial court and the only factors that should be given

"weighted consideration" are factors that "affect the safety of the child." *Id.* at 338. However, we also stated in *M.J.M.* that:

> [T]his conclusion does not mean that a trial court cannot consider a parent's role as the primary caretaker when engaging in the statutorily-guided inquiry…[A] trial court will necessarily consider a parent's status as a primary caretaker implicitly as it considers the section 5328(a) factors, and to the extent the trial court finds it necessary to explicitly consider one parent's role as the primary caretaker, it is free to do so under subsection (a)(16).

*Id.* at 339. In analyzing factor sixteen, the trial court specifically indicated that it did not deem this as a determinative factor and did not give this factor any greater weight.

We conclude that the core of Father's claims are disputes with the trial court's findings of fact and determinations regarding credibility and weight of the evidence. Father essentially asks this Court to re-find facts, re-weigh evidence, and re-assess credibility. That is not our role. *See E.R. v. J.N.B.*, 129 A.3d 521, 527 (Pa.Super. 2015). As evidenced by the trial court's opinion, the trial court performed a detailed and thorough analysis of the Children's best interests. "It is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case." *M.J.M,* 63 A.3d at 339. The trial court's findings and determinations regarding the custody factors are supported by competent evidence in the record and we will not disturb them. Accordingly, we find that the trial court did not abuse its discretion in determining that the best interests of the Children are met by awarding primary physical custody to Mother.

- 11 -

Father next contends that the trial court erred in finding that competent evidence existed to not follow the recommendation of the child custody evaluator. As previously discussed, the trial court appointed Dr. Carolyn Menta to conduct custody evaluations of the parties. Dr. Menta's Initial Report recommended that the current custody arrangement should continue with Mother having primary physical custody of the Children. Three months later, Dr. Menta updated her report and reversed her position and recommended that Father have primary physical custody of the Children in Massachusetts. Father contends that the trial court erred by not following Dr. Menta's recommendation in her Updated Report.

It is well-established that a trial court is not required to accept the conclusions of an expert witness. ***Nomland v. Nomland***, 813 A.2d 850, 854 (Pa.Super. 2002). "So long as the trial court's conclusions are founded in the record, the lower court [is] not obligated to accept the conclusions of the experts." ***Id.*** "[W]hile a trial court is not required to accept the conclusions of an expert witness in a child custody case, it must consider them, and if the trial court chooses not to follow the expert's recommendations, its independent decision must be supported by competent evidence of record." ***M.A.T. v. G.S.T.***, 989 A.2d 11, 20 (Pa.Super. 2010) (*en banc*).

Instantly, it is clear that the trial court seriously considered Dr. Menta's expert recommendation but reached a different conclusion based upon other competent evidence of record. Specifically, the court recognized that Dr. Menta was concerned about the number of times Mother had moved with the

Children and was particularly concerned about Mother's most recent move out of Maternal Grandmother and Maternal Step-Grandfather's house to a house in another school district. The court, however, determined that there was evidence that both Mother and Father had the same number of overall moves in their recent pasts. The court also found it significant that Mother's most recent move was not due to any fault of her own, but rather Mother was forced to vacate the residence after Maternal Grandmother and Maternal Step-Grandfather separated. The court was impressed that Mother was able to secure a spacious home suitable for her Children on little notice. Further, Dr. Menta admitted that she was aware that Mother already had future plans to move into her own residence at the time of the Initial Report. The court found that since Dr. Menta was aware of Mother's future plans to move, "it seems contradictory to hold an expedited move against Mother's overall stability." Trial Ct. Op. at 12. The court also noted that the most recent move was during the summer so the Children were able to adequately prepare and start their new school on time in the fall. Additionally, the Children testified that they had made numerous friends at their new school and liked their new house. The court believed that to remove the Children from school yet again and move them to another state in the middle of the school year was actually contrary to Dr. Menta's recommendation that the Children needed stability. Further, Mother testified that she does not plan on making any additional moves in the future.

The trial court also found it important that Dr. Menta did not have the reports from the Children's therapists when making her recommendations. Dr. Menta stated that those reports would have been beneficial to her in understanding the Children's adaptability. N.T., 10/1/18, at 70. At the trial, the court heard testimony from both Children's therapists from Family Behavioral Resources. The therapists testified that both Children suffered from anxiety while separated from Mother. As examples, they cited instances where A.D. would take Mother's cell phone or car keys into therapy sessions to reassure her that Mother would not leave. A.D.'s therapist also testified that she would walk A.D. to the waiting room halfway through their sessions so she could see that Mother was waiting for her. B.D.'s therapist also testified that B.D. showed signs of separation anxiety from Mother, including asking repeated questions about Mother and her whereabouts during therapy sessions. The therapists expressed some concern about the Children moving to Massachusetts, stating that it would be a difficult transition for any child that suffers from separation anxiety. The trial court found this testimony compelling.

The court also noted that Dr. Menta expressed some concern about B.D.'s behavior as support in her Updated Report. In her Updated Report, Dr. Menta recognized that B.D. was showing decompensation and increased separation anxiety. Dr. Menta also noted that B.D. had asked to return home early to Mother in the middle of a visit with Father. She also found that B.D.

suffered from night terrors and that A.D. showed some signs of increased anxiety.

After reviewing all of the testimony, the court found that it was inconsistent to remove the Children from Mother's primary custody when both Children suffer from separation anxiety from Mother. We conclude that the trial court's decision to decline to follow Dr. Menta's expert recommendation in her Updated Report is supported by competent evidence of record. **See M.A.T.**, 989 A.2d at 19-20; **Nomland**, 813 A.2d at 854. Accordingly, we find no error of law or abuse of discretion.

In his third issue raised on appeal, Father contends that the trial court erred when it found factor fourteen under 23 Pa.C.S.A. § 5328(a) (the history of drug or alcohol abuse of a party or member of a party's household) as a neutral factor. Father states that the court heard evidence that Mother's paramour was on probation for driving under the influence and it was "an error of law by the trial court [to] not consider the risk of harm of having an adult individual currently on probation in Indiana County for driving under the influence in 2018 would have [on] the [C]hildren." Father's Br. at 48.

Factor fourteen under 23 Pa.C.S.A. § 5328(a) requires the trial court to consider "the history of drug or alcohol abuse of a party or member of a party's *household*." 23 Pa.C.S.A. § 5328(a)(14) (emphasis added). Mother clearly testified that her paramour does not reside in her house with herself and the Children. N.T., 10/1/18, at 315. There was no other testimony or evidence

presented that indicated that Mother's paramour was a member of her household. Therefore, Father's claim is without merit.

In his final issue, Father maintains the trial court erred by relying on testimony from the Children's therapists after sustaining Father's counsel's objections during trial. Specifically, Father takes issue with the court's statements in its opinion that "[A.D's therapist] expressed some concern about the [C]hildren moving back to Massachusetts and stated the stress of such a transition could cause some adjustment issues in any child" and "[B.D.'s therapist] stated that she had some concerns about sudden changes in [B.D.'s] routine or sudden moves." Father Br. at 48-49. Father's counsel argues that he objected to these witnesses' ability to testify on whether a relocation to Massachusetts would impact the Children and that the court sustained his objection. He contends that despite his objection, the court improperly relied on the therapists' testimony regarding a potential relocation.

At the custody hearing, in response to Father's counsel's objection, the court clearly stated that the Children's therapists were not permitted to give their opinion or recommendation on which party should have ultimate custody of the Children. N.T., 10/1/18, at 76-77. However, the court permitted the Children's therapists to testify on other issues, including their opinion on what a change in custody might do to the Children. Specifically, the court stated:

> These counselors and therapists have been involved for quite some time. I think both parties have been aware that they have been involved, so I am going to allow them to testify. What I'm not going to allow them to do is to provide any opinion as to their recommendation for custody…

> [T]hey can testify as to what impact the custody has been on the [C]hildren, the issues the [C]hildren have dealt with, and if they have opinions as to what a change in custody would do to the [C]hildren they can testify to that based on their experience as long as they are qualified to do that based on their experience with the [C]hildren to date.

*Id.* at 75-76.

The Children's therapists' testimony did not constitute an opinion or recommendation as to the ultimate custody determination in this case. Rather, the therapists testified as to their general observations of the Children, the progress in their therapy, and how sudden changes may impact them. Accordingly, the trial court was free to rely on the therapists' statements.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/26/2019

- 17 -