J-A14030-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| G.R.R. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| C.L.R. | : | |
| | : | |
| Appellant | : | No. 1844 WDA 2019 |

Appeal from the Order Dated November 18, 2019
In the Court of Common Pleas of Allegheny County Family Court at
No(s):  FD 18-008000-005

BEFORE:  SHOGAN, J., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY McLAUGHLIN, J.:                **FILED AUGUST 13, 2020**

C.L.R. ("Mother") appeals from the order entered on November 18, 2019, in the Court of Common Pleas of Allegheny County, denying her request for relocation and awarding shared physical and legal custody of the parties' minor child C.R. ("Child") to Mother and G.R.R. ("Father"). After review, we affirm.

Mother and Father were married in 1995 and had one daughter, C.R., in 2005. The parties separated in March 2017. At the time of separation, the family was residing in the marital home in Bethel Park, Pennsylvania. Mother thereafter moved to an apartment in Bethel Park and Father moved to Mount Lebanon, approximately four miles away from Bethel Park. Father filed for divorce in May 2018. One month later, Father filed a complaint for shared physical and legal custody of the Child. After a failed reconciliation, the parties entered into a marital settlement agreement, which provided that the parties

would share legal custody of the Child but Mother would have primary physical custody and Father would have liberal partial physical custody every Friday from 6:00 p.m. to 10:00 p.m. and all other times, including overnights, as the parties agreed. The divorce was finalized on February 22, 2019.

Shortly thereafter, Mother filed a notice of proposed relocation seeking to move with the Child to Epping, New Hampshire. Father filed a counter-affidavit objecting to the proposed relocation. On June 25, 2019, the trial court interviewed the Child *in camera*, with both parties' counsel present and with the understanding that the Child's testimony would later be inserted into the record of the trial. N.T., 6/25/19, at 2-3. A three-day trial took place on October 15 and 21, 2019 and November 18, 2019, in which the court heard testimony from 14 witnesses. On November 18, 2019, the trial court denied Mother's request for relocation and awarded the parties 50-50 physical custody of the Child. Mother thereafter filed the instant appeal raising the following 18 issues:

> 1. Whether the lower court erred in refusing to permit additional testimony of 15-year-old honor student Child, while denying Mother's request to appoint a guardian *ad litem* on her behalf where the relocation/custody evaluation was performed by a dependency evaluator?
>
> 2. Whether the lower court erred in failing to proceed on the day and time scheduled for Mother's relocation expedited hearing but relied on evidence mainly manufactured by Father during his delay?
>
> 3. Whether the lower court erred in permitting anti-religion evidence after the parties stipulated that the Child would make no religious decisions until after she was [18] years of age?

4. Whether the lower court erred in relying on the psychological evaluation done by a dependency evaluator, who in [30] years has only ever done this relocation evaluation? (see #1 above)

5. Whether the lower court erred in relying on the testimony of Father's childhood friend who hasn't see the Child in years, over the testimony of the parents of the Child's best friend while limiting Mother's numerous other supporting witnesses who would be "redundant?"

6. Whether the lower court erred in ignoring Father's pornography "hobby"?

7. Whether the lower court erred in ruling on Father's shared custody complaint filed in June 2018 which had been dismissed prior to the hearing?

Relocation Factors

8. Whether the lower court erred in its analysis of the Child's parental relationships?

9. Whether the lower court erred in its analysis of the needs of the Child and impact of relocation on the Child?

10. Whether the lower court erred in its analysis of the feasibility of preserving the relationship between the non-relocating party and the Child through suitable custody arrangements?

11. Whether the lower court erred in its analysis of the age and maturity of the Child whose principal testified she was a wonderful student?

12. Whether the lower court erred in its determination of the established pattern of conduct of the parties in promoting or affording the relationship of the Child with the other party?

13. Whether the lower court erred for sustaining Father's reason/motivation for opposing relocation where Mother offered to bear the cost?

Custody Factors

14. Whether the lower court erred in its analysis of the Child's need for stability and continuity in education, family

and community life where the parties had moved twice before with no ill effects on the Child?

15. Whether the lower court erred in its analysis regarding the availability of extended family when Father seldom visited his family, and the Child visited even less?

16. Whether the lower court erred in its analysis of the Child's sibling relationships where Father was inclined to allow the Child to continue her relationship with her sister, Kara, when Mother testified that Kara was in an abusive relationship and that her 10-year-old son had been abusing the Child?

17. Whether the lower court erred in its analysis of which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the Child where it relied on Father's activities with the Child 12 years ago?

18. Whether the lower court erred in its analysis of each parties' availability to care for the Child or to make appropriate childcare arrangements by relying on Father's unsubstantiated promises and limiting Mother's witnesses?

Mother's Br. at Table of Contents (suggested answers and unnecessary capitalization omitted).

We apply the following standard of review when reviewing a custody decision:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the

trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

***V.B. v. J.E.B***., 55 A.3d 1193, 1197 (Pa.Super. 2012) (citations omitted).

The paramount concern when a trial court orders a form of custody is the best interests of the child. ***S.W.D. v. S.A.R.***, 96 A.3d 396, 400 (Pa.Super. 2014). "A determination of the best interests of the child is based on consideration of all factors which legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well-being." ***L.F.F. v. P.R.F.***, 828 A.2d 1148, 1152 (Pa.Super. 2003). Specifically, the factors that a trial court must consider when awarding custody are set forth at 23 Pa.C.S.A. § 5328(a) of the Child Custody Act, which provides:

> **(a) Factors.**--In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:
>
> (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
>
> (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.
>
> (2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).
>
> (3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

In addition, the factors that trial courts must consider when ruling on a request to relocate[1] are set forth at Section 5337(h):

> **(h) Relocation factors.**—In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:
>
> (1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.
>
> (2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.
>
> (3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.
>
> (4) The child's preference, taking into consideration the age and maturity of the child.
>
> (5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.
>
> (6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

---

[1] Our child custody statute defines "relocation" as "[a] change in a residence of the child which significantly impairs the ability of a nonrelocating party to exercise custodial rights." 23 Pa.C.S.A. § 5322(a).

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S.A. § 5337(h).

At the outset, we note that the majority of Mother's issues are waived or undeveloped. We will address each of Mother's 18 issues in turn.

**Issue 1**:

In her first issue, Mother purports to claim that the trial court erred when it failed to interview the Child a second time and did not appoint a guardian *ad litem* ("GAL") for the Child.

The record reflects that the trial court conducted an on-the-record *in camera* interview with the Child on June 25, 2019. Counsel for both parties were present. The court made it clear that the interview was intended to be used at the future trial and that the Child would not be called back to testify, absent compelling circumstances. At the outset of the hearing, the following exchange occurred:

> THE COURT: And it's our understanding that this interview, absent compelling circumstances indicating otherwise, that you both agree that this interview will be used, inserted into the record of the trial in this case if indeed this matter goes to trial. Is that your understanding?

[FATHER'S COUNSEL]: Yes, Your Honor. Can my client preserve his right to recall the [C]hild at another date and time if necessary?

THE COURT: I would think that we would be looking for a compelling reason if something comes up at the trial that would require that from the [C]hild. But in the case in chief, we wouldn't expect it absent compelling circumstances. If something happens in the course of the trial, I think, of course, that would be preserved.

[FATHER'S COUNSEL]: Just for the record, we were not on notice that the [C]hild would be present today. We had no time to prepare.

THE COURT: This is an expedited relocation conciliation/hearing. And since the [C]hild was brought to court, I decided to meet the 14-year old [C]hild to talk with her[,] with you and [M]other's counsel [] in the courtroom. Okay. Understood, [Mother's counsel]?

**[MOTHER'S COUNSEL]: Yes, Your Honor.**

THE COURT: We aren't going to use the [C]hild at the trial unless we have to. What I extract from her in my discussion now will be it unless if compelling circumstances to the contrary.

N.T., 6/25/19, at 2-4 (emphasis added).

The record indicates that Mother's counsel did not lodge any objection and in fact, expressly agreed to the procedure. An order was also entered the same day that stated that the "[p]arties have agreed that [the] *in camera* interview of [the Child] conducted today will be incorporated into [the] trial record, with [the] goal of sparing [C]hild, absent compelling reason, from having to testify again." Trial Court Order, 6/25/19. Further, Mother failed to argue later at trial that compelling circumstances existed that required the Child to testify a second time. It is well-established that,

> [i]n order to preserve an issue for appellate review, a party must make a timely and specific objection at the appropriate stage of the proceedings before the trial court. Failure to timely object to a basic and fundamental error will result in waiver of that issue. On appeal the Superior Court will not consider a claim which was not called to the trial court's attention at a time when any error committed could have been corrected. In this jurisdiction…one must object to errors, improprieties or irregularities at the earliest possible stage of the adjudicatory process to afford the jurist hearing the case the first occasion to remedy the wrong and possibly avoid an unnecessary appeal to complain of the matter.

***Thompson v. Thompson***, 963 A.2d 474, 475-76 (Pa.Super. 2008) (quoting ***Hong v. Pelagatti***, 765 A.2d 1117, 1123 (Pa.Super. 2000)). Mother has failed to preserve this issue for review and she therefore has waived the issue.

Mother next argues that because the Child's psychological evaluation was performed by a dependency evaluator, she was entitled to the appointment of a GAL. Mother claims that "the evaluator admitted she did dependency cases and only maybe [4] custody evaluations in her [30] years" and that "[i]n dependency cases, the minor child must have adequate representation of counsel." Mother's Br. at 16. Mother's argument is without merit.

"Appointment of a GAL in a custody matter is not mandatory." ***M.B.S. v. W.E.***, ____ A.3d ____, 2020 PA Super 118, *5, n. 6 (filed May 19, 2020) (citing Pa.R.C.P. 1915.11-2).[2] Further, the record indicates that the evaluator

---

[2] Pennsylvania Rule of Civil Procedure 1915.11-2 states: "The court **may**, on its own motion or the motion of a party, appoint a [GAL] to represent the best interests of the child in a custody action." (emphasis added).

was qualified as an expert in the field of psychology and custody of minors, not in dependency, and had conducted approximately 18 to 20 custody evaluations. N.T., 10/15/19, at 6-8. The trial court determined that it was not necessary to appoint a GAL because it "was presented with an intelligent, verbal child who had no apparent difficulty communicating with the [c]ourt, with a thorough psychological evaluation, and with competent counsel presenting relevant information." Trial Court Opinion, filed Feb. 18, 2020, at 2. We find no error by the trial court in declining to appoint a GAL.

**Issue 2**:

Mother next argues that the trial court erred in failing to proceed on the day and time scheduled for her relocation expedited hearing. We find that Mother has waived this issue.

The record reveals that after Father filed a counter-affidavit objecting to Mother's proposed relocation, the trial court scheduled an initial conciliation/hearing on June 25, 2019. Mother states that she and the Child appeared at the conciliation/hearing on June 25, 2019 ready to proceed but the trial court indicated that it had motion's court and was not able to conduct the hearing that day. Mother's Br. at 5. The court offered to hear the matter in the next two days but Father's counsel was not available. *Id.* at 21. The court then offered two days in July, which was the following month, but Mother's counsel was available on only one of those days and Father's counsel was not available on either proposed day. *Id.* Mother states that the "docket

clerk, unfortunately, had no other available dates until October 15…thus placing Mother and [C]hild in additional stress caused by the delay." *Id.*

Significantly, Mother does not argue that she objected to the delay or that she requested a more timely trial date, and a review of the record reveals no such objection or request was made. Accordingly, Mother has failed to preserve this issue and therefore it is waived. *See Thompson*, 963 A.2d at 475-76.

**Issue 3**:

Mother asserts that "the lower court erred in permitting anti-religion evidence after the parties stipulated that the Child would make no religious decisions until after she was [18] years of age." Mother's Br. at 24. Mother seemingly argues that the trial court erred in permitting Father's expert in the Jehovah's Witness religion to testify at trial. However, Mother's argument consists of general rambling statements about religion in custody cases and primarily relies on an article published by the Pennsylvania Family Law Practice and Procedural Manual, which was not part of the record. Mother has presented no argument explaining how the court erred and includes no citation to the record to support her argument. It is not this Court's obligation to formulate an appellant's argument for her "nor shall we scour the record to find evidence to support an argument." *Commonwealth v. Beshore*, 916 A.2d 1128, 1140 (Pa.Super. 2007) (*en banc*). Mother has thus waived this claim by failing to present a developed argument. *See Commonwealth v. Johnson*, 985 A.2d 915, 924 (Pa. 2009) (stating "where an appellate brief

fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived").

Even if the issue was not waived, the trial court specifically stated in its Pa.R.A.P. 1925(a) opinion that it did not rely upon this expert's testimony in reaching its findings and conclusions. Trial Ct. Op., at 3. Accordingly, Mother's claim fails.

**Issue 4**:

Mother's fourth issue is that the lower court erred in relying on the psychological evaluation done by a "dependency evaluator" who had never done a relocation case before. Mother's Br. at 12.

Mother did not object to the evaluator's qualifications as an expert witness at the time of trial nor did she file a motion *in limine* attempting to disqualify the evaluator. As previously stated, the failure to timely object to an alleged error will result in waiver of that issue. **See Thompson**, 963 A.2d at 475-76. Thus, this claim is waived.

**Issue 5**:

Mother's fifth issue is that "the lower court erred in relying on the testimony of Father's childhood friend who hasn't see the Child in years, over the testimony of the parents of the Child's best friend while limiting Mother's numerous other supporting witnesses who would be 'redundant'." Mother's Br. at 39.

Inexplicably, despite its title, the body of Mother's argument under this issue does not mention these witnesses at all or how the court allegedly relied on the testimony. Instead, it contains confusing information about, *inter alia*, the family's counseling sessions, the Child's attendance at school, and the schools in New Hampshire. Thus, Mother has again waived this claim by failing to present a developed argument. **See Johnson**, 985 A.2d at 924; **see also** Pa.R.A.P. 2119(a) (each point treated in an argument must be "followed by such discussion and citation of authorities as are deemed pertinent").

**Issue 6**:

Mother next argues that the lower court erred in ignoring Father's pornography "hobby." Mother's Br. at 41.

At trial, there was testimony that the Child found a pornographic image in the browser history of Father's phone on one occasion. The trial court found that this incident, while clearly unfortunate, did not constitute evidence of a "hobby" on the part of Father and "did not appear to have any discernable, relevant impact upon the [C]hild." Trial Ct. Op., at 4.

Mother's argument with respect to this issue does not contain a single citation to the record or to any legal authority. Rather, her argument consists of general statements about the impact of pornography on children from an article by the American College of Pediatricians. Mother's Br. at 41-42. The only instance of when Mother mentions the present case is when she seemingly takes issue with the family counselor's decision not to address the pornography incident in therapy, which does not explain how the trial court

- 14 -

allegedly erred.[3] Again, Mother has failed to present a developed argument and thus is afforded no relief. **See Johnson**, 985 A.2d at 924.

**Issue 7**:

Mother argues that the trial court erroneously ruled on Father's shared custody complaint because it had been dismissed prior to the trial. Specifically, Mother contends that Father's initial custody complaint that he filed in June 2018 was dismissed in December 2018 after the parties entered into their marriage settlement agreement. Mother asserts that since Father's custody complaint was dismissed, the court was without jurisdiction to modify custody at the relocation hearing. According to Mother, her request for relocation did not place custody at issue. However, the record does not support Mother's claim.

The record indicates that although Father's initial complaint was dismissed in December 2018, Father filed a counter-complaint seeking a

_____

[3] To illustrate, Mother confusingly states: "Although Father's casual dismissal of [the Child's] finding pornographic material that was uncensored on the cell phone he gave her, due to embarrassment, and there has been no evidence presented through the trial that pornography contributed to the divorce, the fact that the counselor he chose to improve his interaction with the [C]hild, did not address the issue, was clearly not an experienced pediatric counselor, [who] made clear to the parties, [the Child] would not be forced to attend." Mother's Br. at 43.

modification of custody on October 1, 2019, shortly before the relocation hearing. The court entered an order that same day indicating that Father's request for modification of custody would be heard at the same time as the relocation hearing. Trial Court Order, 10/1/19. Mother filed a motion to strike the October 1, 2019 order and requested dismissal of Father's request for modification of custody. The court denied Mother's motion to strike on October 15, 2019. Thus, Mother was clearly provided adequate notice that modification of custody was to be at issue at the hearing. **See S.W.D. v. S.A.R.**, 96 A.3d 396, 405-06 (Pa.Super. 2014) (stating "if notice of the proceeding adequately advises a party that custody will be at issue, a court may entertain the request to permanently modify a custody order after hearing in that proceeding"). Accordingly, Mother's claim is without merit.

**Issues 8-18**:

Mother's remaining claims take issue with the trial court's analysis of the custody and relocation factors under 23 Pa.C.S.A. § 5328(a) and 23 Pa.C.S.A. § 5337(h), respectively. In its Pa.R.A.P. 1925(a) opinion, the trial court suggested that these issues be deemed waived because Mother's Pa.R.A.P. 1925(b) Statement was "too vague to determine the specific error at issue." Trial Ct. Op., at 1.

The Rules of Appellate Procedure provide that a Rule 1925(b) Statement "shall concisely identify each error that the appellant intends to assert with sufficient detail to identify the issue to be raised for the judge." Pa.R.A.P. 1925(b)(4)(ii). "Issues not included in the Statement and/or not raised in

- 16 -

accordance with the provisions of this [Rule] are waived." Pa.R.A.P. 1925(b)(4)(vii). When a Rule 1925(b) Statement is "too vague to allow the court to identify the issues raised on appeal[, it] is the functional equivalent of no Concise Statement at all" and waiver is proper. *In re A.B.*, 63 A.3d 345, 350 (Pa.Super. 2013) (citation omitted).

We agree with the trial court that Mother has waived issues eight through 18 because her 1925(b) Statement as to these issues is too vague. *See* Pa.R.A.P. 1925(b)(4). The issues lack specificity such that the trial court was unable to ascertain the precise nature of Mother's complaints. As such, these claims are waived.

Even if these issues are not waived, Mother's claims are without merit. All of Mother's challenges go to the trial court's conclusions and assessments and asks this Court to re-find facts, re-weigh evidence and/or re-assess credibility to her view of the evidence. This we cannot do. "We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations." *J.R.M. v. J.E.A.*, 33 A.3d 647, 650 (Pa.Super. 2011) (quoting *Durning v. Balent/Kurdilla*, 19 A.3d 1125, 1128 (Pa.Super. 2011)). Further, "with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand." *Id.*

Here, the trial court evaluated each custody and relocation factor and clearly articulated the reasons for its decision in open court. *See* N.T.,

- 17 -

11/18/19, at 189-226. We find that the trial court did not err or abuse its discretion in its decision regarding custody or relocation. The trial court soundly analyzed the custody and relocation factors pursuant to Section 5328(a) and Section 5337(h), and after review of the record, we determine that the trial court's findings and determinations are supported by competent evidence in the record. Accordingly, Mother is not due any relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/13/2020