J-S37007-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| NELSON BONILLA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ASHLEY JUSTINE BONILLA | : | |
| | : | |
| Appellant | : | No. 1505 EDA 2024 |

Appeal from the Order Entered May 17, 2024
In the Court of Common Pleas of Monroe County Civil Division at No(s):
009286-CV-2018

BEFORE:  BOWES, J., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY BOWES, J.:               **FILED DECEMBER 9, 2024**

Ashley Justine Bonilla ("Mother") appeals the May 17, 2024 order that granted a child custody modification petition filed by Nelson Bonilla ("Father") and awarded Father primary physical custody and shared legal custody of their three sons:  A.B., born in October 2011; L.B., born in February 2013; and M.B., born in December 2016.  After careful review, we affirm.

Mother and Father married in December 2009.  They remained together through the birth of the children and separated in December 2017.  *See* N.T., 4/30/24, at 108, 140.  Shortly thereafter, Father began a relationship with Amanda Rodriguez, with whom he lived and was engaged to be married at the time of these proceedings.  *See id*. at 34, 71.  Following their separation, Mother began a relationship with Rainier Solano, with whom she now resides.[1]

_____

[1] Mother and Father divorced on December 18, 2020.

*See id*. at 137-38. Mother's residence is located in Bushkill, Pennsylvania, while Father's home is in Tannersville, Pennsylvania. *See id*. at 34, 137. A.B. and L.B. attend the East Stroudsburg School District, which is local to Mother's home. Father's residence is located approximately forty minutes from Mother's home. *See id*. at 11, 34, 85, 181.

Mother exercised primary physical custody throughout the life of this case. Father exercised various periods of partial custody, most recently pursuant to a March 11, 2021, custody order. *See* Order, 3/11/21, at 5. However, after exercising partial physical custody pursuant to that order for approximately one year, Father filed a petition seeking equally shared physical custody. While he did not prevail, the trial court awarded him shared physical custody during the summer of 2022 and custody periods every Wednesday evening and every other weekend during the 2023 school year. *See* Order, 5/12/22, at 6.

On May 5, 2023, Father filed the instant petition, which requested primary physical custody of the children. During the ensuing hearing, Father testified and presented both his fiancée and his mother and Lucy Castro. Mother and Isabelle Quiles, the maternal grandmother, testified in support of Mother's position. The trial court interviewed A.B. and L.B. *in camera*, who were then twelve and eleven years old, respectively. M.B. was seven years old at the time of the hearing and did not testify.

- 2 -

After taking the matter in consideration, the trial court awarded Father primary custody "subject to Father procuring a residence within the [C]hildren's school district." Order, 5/17/24, at 18. Specifically, the court granted Father primary physical custody and awarded Mother partial physical custody every Wednesday and every other weekend. *See id*. at 21-22. The trial court's order also included a thorough discussion of the relevant custody factors outlined in 23 Pa.C.S. § 5328(a), which we set forth *infra*.[2]

_____

[2] At the time of these custody proceedings, the list of factors set forth at § 5328(a) included only the elements set forth above. We note, however, that our General Assembly contemporaneously enacted significant amendments to, *inter alia*, the custody factors "pursuant to Act of April 15, 2024, P.L. 24, No. 8 (known as 'Kayden's Law')." *Velasquez v. Miranda*, 321 A.3d 876, 886 n.6 (Pa. 2024). Specifically, Kayden's Law expands the factors to be considered in the custody court's best interest analysis by requiring the court to give "substantial weighted consideration" to, *inter alia*, the "safety of the child," which is defined as "the physical, emotional and psychological well-being of the child," and any "violent or assaultive behavior committed by a party." *Id*. In addition to new elements, our review of these amendments also reveals that the language of many of the factors have been substantively revised. *See* 23 Pa.C.S. § 5328(a)(1), (2), (2.2), (2.3), (4), and (8).

These statutory amendments took legal effect on August 13, 2024, *i.e.*, several months after the trial court issued the instant custody determination. It is a well-settled principle of statutory interpretation that "[n]o statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly." 1 Pa.C.S. § 1926. There is no retroactivity clause included in the text of Kayden's Law. *See generally* PA LEGIS 2024-8, 2024 Pa. Legis. Serv. Act 2024-8 (S.B. 55). Thus, we do not apply Kayden's law in this case. *See*, *e.g.*, *R.M. v. J.S.*, 20 A.3d 496, 513 n.15 (Pa.Super. 2011) (declining to apply revised version of statute in custody proceedings that concluded several months prior to the revisions taking legal effect).

Mother filed a timely notice of appeal along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The trial court submitted a Rule 1925(a)(2)(ii) statement, which referred this Court to the reasoning already set forth in its May 17, 2024 opinion and order.

Mother's presents ten separate issues that challenge the trial court's findings with respect to the custody factors at § 5328(a)(1), (2), (6)-(13), and (15). **See** Mother's brief at 7-8. We will review Mother's arguments and address the court's findings with respect to each of these factors *seriatim*.

Our standard and scope of review in this context is well-established:

> Our standard of review over a custody order is for a gross abuse of discretion. Such an abuse of discretion will only be found if the trial court, in reaching its conclusion, overrides or misapplies the law, or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias, or ill-will as shown by the evidence of record.
>
> In reviewing a custody order, we must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the trial court who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

**Rogowski v. Kirven**, 291 A.3d 50, 60-61 (Pa.Super. 2023) (cleaned up).

As with all custody-related matters, the Pennsylvania courts' "paramount concern is the best interest of the child involved." **Rogowski**,

291 A.3d at 61 (internal citation and quotation omitted). To that end, our law provides that a court is only empowered to change an existing custody order if the modification will "serve the best interest of the child." 23 Pa.C.S. § 5338(a). Specifically, the Act sets forth a number of factors at § 5328(a) that a court must consider prior to modifying an existing custody order. **See E.B. v. D.B.**, 209 A.3d 451, 460 (Pa. Super. 2019). While a court's general consideration of these factors is mandatory, "it is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case." **Id**. (cleaned up).

These factors provide as follows:

**(a) Factors.**--In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

- 5 -

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a). In order to evince consideration of these required elements, custody courts must set forth a discussion of these best-interest

factors "prior to the deadline by which a litigant must file a notice of appeal." ***A.V. v. S.T.***, 87 A.3d 818, 820 (Pa. Super. 2014).

Instantly, the trial court provided a timely assessment of these factors in a memorandum that it filed contemporaneously with its May 17, 2024 opinion. ***See generally*** Trial Court Opinion, 5/17/24, at 1-17. Specifically, the court determined that factors three, four, fourteen, and fifteen inured to the benefit of Mother. By comparison, it weighed factors one, two, eight, twelve, and thirteen in favor of Father. Factors five, six, seven, nine, ten, and eleven were deemed neutral or inapplicable.[3] The court did not apply factor sixteen's catchall provision.

Mother challenges the court's findings with respect to every factor that did not weigh in her favor and one that did, factor fifteen. ***See*** Mother's brief at 16-47. We address each of the trial court's implicated findings, in turn.

With respect to the first factor, concerning the parties' respective support of frequent and continuing contact, Mother argues that the court failed to credit her denial that she interferes with Father's attempts to contact his

---

[3] The custody court did not make any specific findings with respect to 23 Pa.C.S. § 5328(a)(2.1). In declining to address this factor, we discern that the court concluded that these particular considerations were not relevant. As no party has objected and there are no indications that this factor is at all relevant to the instant case, we observe no error. ***See***, ***e.g.***, ***M.J.M. v. M.L.G.***, 63 A.3d 331, 336 (Pa. Super. 2013) ("The Custody Act requires only that the trial court articulate the reasons for its custody decision in . . . a written opinion or order taking into consideration the enumerated factors.").

sons and she makes counteraccusations of interference by Father. *See* Mother's brief at 21-23.

In addressing Mother's contention, the trial court found that "Mother does not encourage contact between Father and the [c]hildren." Trial Court Opinion, 5/17/24, at 4. In this vein, the trial court found that Mother and Mr. Solano engaged in a pattern of intimidation targeting Father and Ms. Rodriguez with the object of dissuading Father from regularly interacting with the children. *See id*. In contrast to Mother's obstructive behavior, the court determined that Father permits the children to communicate promptly with Mother during his own custodial time. *Id*. at 4-5.

Our review of the certified record reveals that there is sufficient evidentiary support for both aspects of the court's findings. First, Father testified that the children are not allowed to speak with him on their respective cell phones. N.T., 4/30/24, at 57-58. Indeed, Mother and both older children confirmed that they are not permitted to speak with Father while using their cell phones. *See id*. at 17, 30, 144. Similarly, when Father has attempted to contact the children via Mother's cell phone, she often does not return his calls for days. *See id*. at 57. In sharp contrast, Father permits the children to communicate with Mother. *See id*.

Furthermore, as to Mother's pattern of intimidation, Father and Ms. Rodriguez each testified that both Mother and Mr. Solano had threatened and harassed them on multiple occasions in an attempt to discourage them from

interacting with the children. *See id*. at 65-66, 76, 79-80, 124-26. Specifically, these incidents occurred at a doctor's appointment and a youth baseball event, the latter of which included threats of physical violence from Mother and Mr. Solano. *See id*. Additionally, Father also testified that Mother has attempted to exclude Father from attending the children's medical appointments. *See id*. at 65-66.

Finally, while Mother asserts that Father provoked the foregoing incidents of intimidation, her argument in this regard amounts to little more than a request that we re-weigh the credibility determinations rendered by the trial court, which we may not do. *See Rogowski*, 291 A.3d at 60-61. Thus, insofar as the trial court deemed Mother's explanations unconvincing, we defer to the trial court's credibility findings that are supported by the evidence of record. Accordingly, Mother's challenge to the court's consideration of the first best-interest factor is unavailing.

Turning to the second factor, which concerns present and past incidents of abuse, Mother argues that the trial court failed to fully consider her testimony regarding Father's prior abusive behavior. *See* Mother's brief at 23-27. She recites several past incidents involving Father, essentially claiming that the court should have principally credited her testimony and determined that this factor either favored her or was neutral. *See id*.

The trial court found that factor two supported Father's position despite his previous struggles with post-traumatic stress disorder ("PTSD") and a

traumatic brain injury ("TBI"), which were "the result of his military service with the Marine Corps." Trial Court Opinion, 5/17/24, at 5. Consequently, Father is "fully disabled and receives disability benefits" from the Veterans' Administration. *Id*. The trial court found that Father's conditions caused him to abuse alcohol and engage in abusive behavior towards Mother during their marriage, although not towards the children. *See id*. However, the court also credited Father for successfully addressing his problems with treatment and found it "significant that there was no evidence presented . . . that Father ever abused the [c]hildren or otherwise that Father poses any future risk of harm to Mother." *Id*. By contrast, the trial court determined that at the time of the custody hearing Mother was permitting Mr. Solano to physically assault the children, which the court found to be "unacceptable and troubling." *Id*.

Again, the certified record reveals ample support for the trial court's findings. The only unchallenged evidence of Father's prior abusive behavior was testimony regarding an incident in 2014 when his anger issues caused the landlord to terminate the family's lease. Additionally, a temporary protection of abuse ("PFA") order was issued against Father by mutual consent from November 2018 through April 2019. While the PFA order was not made a part of the certified record, the testimony adduced during the hearing makes clear that it did not involve a determination that Father was abusive. *See* N.T., 4/30/24, at 81, 102-03, 211-12. Furthermore, the PFA was not renewed upon expiration.

Offsetting this information was Father's testimony that he successfully completed voluntary alcohol rehabilitation "over [ten] years" prior to these proceedings and that he successfully completed anger management treatment after the aforementioned PFA was entered. *See id*. at 70, 102-03. Father also testified that he continues maintenance for his conditions through medication and monthly counseling sessions. *See id*. at 69-70.

Thus, the record supports the court's findings that the children are not at a risk of abuse or harm from Father. The same, however, cannot be said of Mother's household. Specifically, Father testified that the children confided in him that Mr. Solano physically abuses them while they are in Mother's home. *See id*. at 50 ("[T]hey confided in me that they were being hit by her boyfriend. That they were being slapped really hard in the face."). Although Father reported these concerns to the police, the resulting Child Protective Services investigation determined the allegations were unfounded after the children were unable to disclose Mr. Solano's abuse to investigators. *See id*. at 97. Both A.B. and L.B., however, subsequently testified in these proceedings that Mr. Solano has assaulted them in the past by striking them in the face. *See id*. at 18, 30. Furthermore, Father testified the children generally struggle with being truthful when relaying incidents that occur in Mother's home due to fear of reprisals. *See id*. at 95.

Based upon the foregoing, we observe no abuse of discretion or error of law in the trial court's assessment of this factor. The evidence detailed above

reveals that Father's prior issues with abusive behavior towards Mother have been rectified. The trial court also found the testimony of Father, A.B., and L.B. to be credible regarding Mr. Solano's inappropriate behavior towards the children. *See* Trial Court Opinion, 5/17/24, at 5. Moreover, the trial court also validated Father's testimony regarding the children's reticent behavior when discussing Mother and events that occur in her home. *See id*. at 8. To the extent that Mother once more suggests that we re-weigh the evidence of record in her favor, we are bound by the trial court's conclusions that are supported by the record. *See Rogowski*, 291 A.3d at 60-61. Hence, Mother's challenge to the trial court's consideration of the second best-interest factor fails.

Next, Mother challenges the trial court's conclusion that factor six, concerning sibling relationships, was neutral. *See* Trial Court Opinion, 5/17/24, at 8 ("The Children have always lived together in the same household. Neither party currently has children from another relationship that have a relationship with the Children at issue."). Mother argues that the court should have considered her pregnancy at the time of the custody proceedings because she had an anticipated due date in August 2024. *See* Mother's brief at 28-29 ("This factor should be found in favor of [Mother], as a sibling to the children will be born in August 2024.").

It is well-established that "[t]he policy of this Commonwealth is that, where possible, siblings should be raised together absent 'compelling reasons'

to do otherwise." ***L.F.F. v. P.R.F.***, 828 A.2d 1148, 1152 (Pa.Super. 2003) (cleaned up). Instantly, however, there is simply no evidence the children had a relationship with their prospective half-sibling. Indeed, Mother testified that her due date was still four months away at the time of the custody hearing. ***See*** N.T., 4/30/24, at 168-69. Tellingly, Mother has cited no legal authorities suggesting the trial court was required to consider the implications of a potential half-sibling relationship in the future, particularly where the three siblings affected by the custody order will remain together. As quoted above, the trial court's holding fully acknowledged and addressed the **existing** sibling relationships amongst the children, and we discern no abuse of discretion by the court with respect to the weight it placed upon this factor. ***See*** Trial Court Opinion, 5/17/24, at 8. Thus, this argument also fails.

Mother next assails the trial court's consideration of factor seven, which concerns the well-reasoned preferences of the children based upon their maturity and judgment. She argues that the trial court erred in concluding that A.B. and L.B. were sufficiently mature to express any preference regarding custody. ***See*** Mother's brief at 29 ("[T]he children lack the maturity to make a determination on their preference."). Alternatively, Mother contends that the court should have weighed this factor in her favor since the children allegedly "did not wish for [Father] to have primary custody." ***See*** ***id***. at 30.

The trial court found that this factor was neutral after determining that A.B. and L.B. had both expressed a well-reasoned preference for equally shared physical custody between Mother and Father. *See* Trial Court Opinion, 5/17/24, at 8-9. The court specifically credited the children's testimony on maturity and developmental grounds, stating, "When A.B. and L.B. each testified, they spoke candidly and well-formulated their thoughts and opinions." *See id*. at 8.

The certified record supports the trial court's determination. First, both A.B. and L.B. clearly testified that they would prefer an equally split award of physical custody. *See* N.T., 4/30/24, at 14, 28. To the extent that Mother challenges the trial court's determination that the boys were sufficiently mature to express a well-reasoned preference, there is no arguable basis to disturb either the trial court's above-stated determination concerning the children's competency to testify about their preferences or the weight it placed on the children's testimony. *See Rogowski*, 291 A.3d at 60-61. Similarly, Mother's alternate argument mischaracterizes her sons' testimony as favoring her. If anything, their respective testimony indicated a desire to increase their custodial time with Father. Thus, we reject Mother's contention that the trial court erred in deeming factor seven to be neutral.

Turning to factor eight, which considers the attempts of one parent to alienate the other parent, the trial court found that this factor militated in favor of Father and explained its reasoning, as follows:

> [T]he [c]ourt infers the Children have in the past been directed not to reveal information about their time in Mother's custody to Father and otherwise to be untruthful to Father about matters Mother does not want to come to light. Father provided believable testimony that the Children become silent or extremely reticent to tell him anything involving time spent in Mother's care. Father's believable testimony further showed [Mr. Solano] in the past has attempted to usurp Father's role in the Children's life and directly harassed Father . . . . The [c]ourt after hearing the evidence also deduces that Mother is continuing to condone such disturbing behavior by her partner.

Trial Court Opinion, 5/17/24, at 9.

Mother contends that there was no evidentiary basis for the court to reach its conclusions. *See* Mother's brief at 30 ("The children's testimony reflected that they have a loving relationship with [Mother] and no testimony would suggest [Mother] has told them to not reveal information."). However, this perspective ignores Father's above-cited testimony regarding his concerns as to the children's demeanor and truthfulness when discussing their time spent in Mother's custody. *See* N.T., 5/17/24, at 95-96. These concerns were subsequently ratified by the trial court's own observation that "when the [c]ourt asked them about their time spent with their Mother, A.B. and L.B. responded with a long pause, soft voice, and without eye contact." Trial Court Opinion, 5/17/24, at 8. As the record sustains the trial court's expression of rationale, Mother's argument finds no purchase here.

Next, we address Mother's arguments concerning the ninth and tenth factors collectively. The trial court concluded that both factors were neutral because Mother and Father "are equally likely to maintain a loving, stable,

consistent, and nurturing relationship with the children adequate for the children's emotional needs" and were "equally likely to attend to the daily physical, emotional, developmental, educational and special needs of the children." Trial Court Opinion, 5/17/24, at 10. Mother alleges that these factors should favor her because she served as the children's primary care giver since their birth and has demonstrated her ability to satisfy their needs. Mother's brief at 32-38.

Mother is factually correct insofar as the certified record reflects that she traditionally exercised primary physical custody of the children since her separation from Father. The certified record simultaneously demonstrates, however, that Father is equally capable as Mother of maintaining a strong and stable relationship with the children. Specifically, Father testified extensively regarding his efforts to care for the children, attend their medical appointments, involve himself in their educational needs, and reward them for good behavior. *See* N.T., 4/30/24, at 40-41, 61-63. Corroborating Father's testimony, A.B. and L.B. both averred that the siblings participate in enriching activities with Father "[a]ll the time" during his custodial time, including vacations and trips to amusement parks, sporting events, and regular visits with Father's extended family. *See id*. at 14, 26-27. Finally, Ms. Rodriguez also testified similarly regarding Father's efforts. *See id*. at 118-19.

Based upon the foregoing, our review reveals ample evidentiary support for the trial court's conclusion that both Mother and Father could foster a

loving, stable, consistent, and nurturing relationship with the children and the mere fact that Mother was a capable parent does not detract from Father's separate abilities and experience. Accordingly, the trial court did not err in deeming factors nine and ten to be neutral.

Similarly, we find no fault with respect to the court's consideration of the eleventh factor, regarding the proximity of the parties' residences. The trial court deemed the factor neutral because "[t]he proximity of the parties' residences, as testified between 35-45 minutes, is such that a standard custody order could be arranged without imposing significant inconvenience upon either parent." Trial Court Opinion, 5/17/24, at 10. Mother's arguments, which focus on Father's past residences, are largely non-responsive to this finding because she both neglects to discuss the relative location of those homes and ignores Father's anticipated relocation to the children's present school district after his lease expired in September 2024. *See* Mother's brief at 38-39; N.T., 4/30/24, at 34. Indeed, the trial court specifically structured its custody order to maintain the existing shared custody outlined in the trial court's May 12, 2022 order **until** Father relocates. *See* Order, 5/17/24, at 21. The court did not abuse its discretion in addressing factor eleven in this manner.

Mother's arguments in relation to factor twelve, regarding each parent's availability to provide childcare or make the necessary childcare arrangements, are not particularly on point insofar as she continues to focus

on her traditional role as the primary caregiver, as discussed in factors nine and ten, rather than the parties' respective availability to act in that capacity. *See* Mothers brief at 39-41; *compare* 23 Pa.C.S. § 5328(a)(9)-(10) *with* 23 Pa.C.S. § 5328(a)(12). The trial court determined that factor twelve favored Father due to his unrestricted availability to provide childcare based on his status as a fully disabled veteran. *See* Trial Court Opinion, 5/17/24, at 10 ("Father is fully disabled and readily available for taking care of the [c]hildren."). By contrast, it concluded that Mother was not as readily available due to her work schedule, although it found both her and Father capable of making alternative childcare arrangements through their respective extended families. *See id*. at 10-11.

The certified record fully supports the trial court's conclusions. Father testified regarding his full military disability and his availability to serve as a full-time caregiver for the children. *See* N.T., 4/30/24, at 69-72. Likewise, Mother testified that she works on weekdays until approximately 4:00 p.m., with even "busier" shifts during most weekends. *See id*. at 139-40. As the record supports the court's findings, we will not disturb them.

Mother's next claim implicates the trial court's findings pursuant to factor thirteen, which assesses the level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. While acknowledging the high level of conflict in Mother and Father's relationship, the court found that this factor favors Father since Mother "substantially fails

to communicate or cooperate with Father in connection with custody matters." Trial Court Opinion, 5/17/24, at 11. The court also determined that Mother's explanations for her lack of cooperation with Father were not credible. *See id*. at 12. In pertinent part, Mother argues that the court's findings were "unsupported by facts presented at the time of trial." Mother's brief at 45. We disagree.

As discussed *supra*, both Father and Ms. Rodriguez testified extensively regarding the efforts of Mother and Mr. Solano to coerce Father into spending less time with the children through intimidation and threats of violence. *See* N.T., 4/30/24, at 65-66, 76, 79-80, 124-26. Father also explained that Mother failed to keep him apprised of critical information regarding the children's health and well-being. In addition to Father averring that Mother attempts to exclude him from the children's medical appointments, he also testified that Mother failed to advise him that L.B. had been diagnosed with attention deficit hyperactivity disorder ("ADHD") and enrolled in related therapy. *See id*. at 65-66, 40-41. In general, Father averred Mother does not communicate with him. *See id*. at 46 ("I'm mostly ignored on everything.").

Furthermore, while Mother's arguments cast Father as the sole reason for their discord, the trial court specifically rejected that characterization. As noted throughout this memorandum, we are bound by the credibility findings of the trial court if they are supported by the certified record. *See Rogowski*,

291 A.3d at 60-61. Having determined that the court's findings of facts are supported by sufficient and competent evidence, no relief is due.

Mother's final issue concerns the trial court's determination that factor fifteen, which encompasses the mental and physical condition of the parties, militated slightly in her favor. Mother contends that the factor should have been given more weight because Father is disabled due to PTSD and TBI and she is in perfect health physically and mentally. **See** Mother's brief at 45-46.

Notwithstanding Mother's critique of the manner that the court assessed this factor, the certified record supports the trial court's determination. Stated simply, there is nothing in the certified record to suggest that Father's medical conditions negatively impact his ability to care for and interact with the children. **See generally** N.T., 4/30/24, at 14, 26-27, 40-41, 61-63, 118-19.

Furthermore, to the extent that Mother contends that the trial court should have weighed this particular evidence differently, we defer to the trial court's well-supported findings. **See Rogowski**, 291 A.3d at 60-61; **see also B.S.G. v. D.M.C.**, 255 A.3d 528, 535 (Pa.Super. 2021) ("While [Mother] would have preferred for the trial court to have placed more weight on testimony favoring [her], we have explained that, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand."). Thus, we observe no abuse of discretion or error of law in the court's finding that this factor was not dispositive.

Having found that the certified record supports the trial court's custody determination, we affirm the order awarding Father's primary physical custody of A.B., L.B., and M.B.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/9/2024